## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| PAULA THERIOT, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>   v.<br><br>LOUIS VUITTON NORTH AMERICA, INC.,<br><br>          Defendant. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**Dated:** April 8, 2022

Paula Theriot ("Plaintiff"), individually and on behalf of all others similarly situated (collectively, the "Class," as more fully defined below), brings this Class Action Complaint against Defendant Louis Vuitton North America, Inc. ("LVNA" or "Defendant"), and, based upon Plaintiff's personal knowledge, investigation by retained counsel, and personal belief, alleges as follows:

## NATURE OF THE CASE

1. When consumers shop for products, they expect that companies will follow the law in promoting and advertising those products.

2. Consumers expect that, if they are sharing their data with companies in connection with a potential transaction, the companies will be transparent about what data is being collected, how it is being used, and by whom.[1] This is particularly the case when companies collect what has come to be known as "biometric data."

3. Facial scanning technology, which is used for anything from applying filters to photographs to verifying a user's identity, uses biometric data. Fingerprint authentication, where a user's fingerprint is used in lieu of a password or key, is another type of technology that uses biometric data.

4. While more than half of consumers are comfortable using fingerprint scans,[2] consumers have substantial privacy concerns regarding the use of facial scanning. According to a recent survey, more than 80% of consumers are uncomfortable with apps storing images of their

---

[1] Lisa Joy Rosner, How Biometric Data Will Shift The Privacy Conversation, *Forbes* (July 2, 2019), *available at* https://www.forbes.com/sites/forbescommunicationscouncil/2019/07/02/how-biometric-data-will-shift-the-privacy-conversation/?sh=38b3ce093f4c.

[2] New Survey on Biometric Technology Shows Consumers Are OK With Some Forms and Wary of Others, *UT News* (May 3, 2018), https://news.utexas.edu/2018/05/03/new-survey-on-consumer-attitudes-toward-biometric-technology/.

faces.[3] And for good reason: for example, in the not-too-distant past, a relatively unknown company, Clearview AI, scraped user photos from social media companies' databases, and used facial-recognition technology on those photos to compile a database for secret and illicit surveillance purposes.[4]

5.      In response to the ever-increasing prevalence and proliferation of biometric information collection (whether lawful or not), the Illinois General Assembly passed the Biometric Information Privacy Act of 2008, 740 Ill. Comp. Stat. 14, *et seq*. ("BIPA").

6.      BIPA recognizes that because biometric information is "unlike other unique identifiers that are used to access finances or other sensitive information," in that it cannot be changed and is "biologically unique to the individual," special protections needed to be placed upon its use, collection, retention, and destruction.

7.      In the language of the BIPA statute itself, the Illinois General Assembly directly addressed the public's stake in this important sphere of data privacy, noting that "[a]n overwhelming majority of members of the public *are weary of the use of biometrics when such information is tied to finances and other personal information.*" 740 Ill. Comp. Stat. 14/5 (emphasis added).

8.      Recognizing that typical consumers are not equipped to defend themselves from large corporations bent on acquiring and monetizing their most private, unchangeable information, the Illinois Legislature, by enacting BIPA, gave consumers a powerful, protective tool.

---

[3] Danielle Commisso, Concerns Grow Over Consumer Privacy and Facial Recognition Tech, Civic Science (Apr. 20, 2021), *available at* https://civicscience.com/concerns-grow-over-consumer-privacy-and-facial-recognition-tech/#:~:text=Like%20most%20new%20technologies%2C%20younger%20generations%20are%20more,facial%20recognition%20use%20on%20social%20media%20and%20apps.

[4] Will Knight, Clearview AI Has New Tools to Identify You in Photos, *Wired* (Oct. 4, 2021), *available at* Clearview AI Has New Tools to Identify You in Photos | WIRED.

9.      Despite consumer concerns regarding facial-scanning technology, and BIPA's clear mandate, LVNA—the North American subsidiary of LVMH Moët Hennessy – Louis Vuitton SE, a multi-billion-dollar company that has been characterized as "the world's most valuable luxury brand"[5]—has refused, and continues to refuse, to inform users that it is using technology on its website to collect their biometric facial scans, and neither informs users that their biometric identifiers are being collected, nor asks for their consent.

10.     LVNA sells the image of luxury to consumers, inviting them to virtually "try on" its designer eyewear through its website's "Virtual Try-On" feature. Through this feature, visitors to LVNA's website—including Plaintiff and the other Class members—are able to view themselves in a pair of expensive, designer sunglasses. All a user has to do is enable their computer or phone camera to take a photo to be used by the website or upload their photo to the website.

11.     But, unbeknownst to its website users—including Plaintiff and the other Class members—LVNA collects detailed and sensitive biometric identifiers and information, including complete facial scans, of its users through the Virtual Try-On tool, and it does this without first obtaining their consent, or informing them that this data is being collected.

12.     LVNA also fails to disclose to visitors of its website who use the Virtual Try-On tool—including Plaintiff and the other Class members—that their biometric information or biometric identifiers are being collected or stored.

13.     LVNA also fails to provide users of a specific purpose for the collection of their biometric information or biometric identifiers, or a schedule setting out the length of time during

---

[5] Jamie Weiss, *Louis Vuitton's Digital Moves Evidence That Luxury Brands Are Finally Taking E-Commerce Seriously*, *DMARGE* (Dec. 1, 2020), https://www.dmarge.com/2020/12/lvmh-taking-e-commerce-seriously.html.

which that biometric information or biometric identifiers will be collected, stored, used, or will be destroyed.

14.     LVNA has violated BIPA—and continues to violate BIPA—each and every time a website visitor based in Illinois uses the Virtual Try-On tool, because LVNA continues to collect and store or facilitate the storage of biometric information or biometric identifiers without disclosure to or consent of any of the consumers who try on glasses on their website, necessarily using LVNA's Virtual Try-On tool to do so.

15.     As a result of LVNA's BIPA violations—violations that are ongoing and continue through the present day—Plaintiff, individually and on behalf of the other Class members, asks the Court to impose upon LVNA the BIPA-mandated statutory penalties relating to the collection, storage, and disclosure of Plaintiff's biometric identifiers and biometric information, as well as injunctive relief requiring LVNA's destruction of already-collected and stored information, and its adoption of disclosures which inform consumers about LVNA's collection of their biometric data and identifiers.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, because: (a) this is a proposed class action in which there are at least 100 Class members; (b) the parties are minimally diverse, as Plaintiff and Defendant are domiciled in different states; and (c) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs.

17.     This Court has personal jurisdiction over LVNA because LVNA regularly conducts business throughout New York, and its principal place of business is in New York.

18.     Venue is also appropriate in this District because, although Plaintiff did not view or consent to the Terms and Conditions ("Terms") on LVNA's website, and disputes whether they are operative over her claims, the Terms require that any action brought against LVNA be brought "in the state and federal courts of the State of New York" and establishes as the "venue for the adjudication or disposition of any such claim, action or dispute will be in the City of New York, New York."

## PARTIES

*Plaintiff*

19.     Paula Theriot is a citizen and a resident of the State of Illinois, residing at 719 South Grace Street, Marissa, Illinois 62257. While at that residence, Ms. Theriot used LVNA's website four times between November 3,2020 to December 19, 2021 to try on various different pairs of sunglasses, spending approximately one hour on LVNA's website each time that she used it.

20.     All four times, Ms. Theriot accessed LVNA's Virtual Try-On tool on her phone, and used both the real-time Virtual Try-On feature, and the picture upload Virtual Try-On feature. Ms. Theriot briefly reviewed LVNA's website terms and conditions, but did not see any indication that her biometric information would be collected or distributed in those website terms and conditions. Ms. Theriot was also not informed by the Virtual Try-On tool that using the tool would allow LVNA to collect her biometric information and identifiers.

21.     Ms. Theriot did not understand that LVNA would collect or distribute her biometric data, and she would not have used the Virtual Try-On tool had she been aware of this fact.

22.     LVNA never obtained Ms. Theriot's informed, written consent to collect, transmit, store, or process her biometric information, nor did LVNA inform Ms. Theriot about the length of

time her biometric information would be stored, when it would be destroyed, or that it would transfer her biometric information to a third party for processing.

23.    Ms. Theriot never provided a written release to LVNA authorizing it to collect, store, or use her facial scans or facial geometry, and she was never informed, in writing or otherwise, about the purpose for collecting her biometric data.

24.    Ms. Theriot does not remember seeing any terms of service or privacy policy when using the Virtual Try-On tool, nor does she remember LVNA making such policies readily accessible so that she could review them prior to using the Virtual Try-On tool.

*Defendant*

25.    Louis Vuitton North America, Inc. is an American company, incorporated in Delaware, with its principal place of business at 1 East 57th Street, New York, New York 10022.

26.    Louis Vuitton is a global luxury brand that markets and sells a variety of high-end products, ranging from luxury trunks and leather goods to ready-to-wear shoes, watches, jewelry, accessories, and—pertinent to this litigation—eyewear.

27.    LVNA's parent company, LVMH Moët Hennessy – Louis Vuitton SE, had a $36.77 billion valuation as of 2021, making Louis Vuitton the single most valuable luxury brand in the world, and the thirteenth most valuable brand worldwide across all sectors.

## FACTUAL ALLEGATIONS

A.      **BIPA'S Legal Framework**

28.      The Illinois General Assembly enacted BIPA to protect the privacy rights of every Illinois resident who has their unique, biometric identifiers captured or retained by self-interested, profit-obsessed companies.

29.      In enacting BIPA, the General Assembly found that the sensitivity of biometric information and identifiers warrants heightened protection because companies frequently collect it from individuals like Plaintiff and the other Class members. Specifically, the General Assembly found that "[b]iometrics are unlike other unique identifiers" like Social Security Numbers because they are "biologically unique to the individual" and cannot be changed if compromised. 740 Ill. Comp. Stat. 14/5(c).

30.      Thus, a person whose biometrics are compromised "has no recourse" and "is at heightened risk for identify theft." *Id*.

31.      When enacting BIPA, the General Assembly recognized that "[t]he full ramifications of biometric technology are not fully known." 740 Ill. Comp. Stat. 14/5(e). Therefore, "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 Ill. Comp. Stat. 14/5(f).

32.      BIPA defines "biometric identifiers" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 Ill. Comp. Stat. 14/10.

33.      "Biometric information" is identified as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers. *Id*.

7

34.     Accordingly, BIPA requires "private entities"—including companies like LVNA—that collect certain biometric identifiers or biometric information, or cause such information and identifiers to be collected, to take a number of specific steps to safeguard the biometric data they collect, store, or capture.

35.     Specifically, companies that collect the above-referenced biometric identifiers or biometric information, such as LVNA, must obtain informed consent from consumers prior to collecting such data from them, and they must publicly disclose to consumers their uses, retention of, and a schedule for destruction of the biometric information or identifiers that they do collect.

36.     With respect to safeguarding biometrics, BIPA requires that private entities—including companies like LVNA—that possess biometric identifiers or biometric information must:

> [D]evelop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

*Id*. § 14/15(a).

37.     BIPA also requires that private entities in possession of biometric identifiers or biometric information—including companies like LVNA—must safeguard such data "using the reasonable standard of care within the private entity's industry" and must "store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." *Id*. § 14/15(e).

38.     With respect to informed consent, BIPA provides:

8

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

*Id*. § 14/15(6).

39.     BIPA further provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." *Id*. § 14/l1(c).

40.     Under BIPA, private entities—including companies like LVNA—are prohibited from disclosing, redisclosing, or otherwise disseminating a consumer's biometric identifier or biometric information (or causing it to be done) unless the consumer has consented to such disclosure or redisclosure. *Id*. § 14/15(d).

41.     BIPA provides for statutory damages, injunctive relief, reasonable attorney's fees and costs, and other relief "as the State or federal court may deem appropriate" when a private entity violates a consumer's rights under the statute. *Id*. § 14/20. Where a violation is the result of a private entity's negligence, BIPA provides for the greater of actual damages or $1,000 in liquidated damages per violation, and, if the violation was intentional or reckless, BIPA provides for the greater of actual damages and liquidated damages of $5,000 per violation. *Id*.

**B.     LVNA Collects Its Website Users' Biometric Information And Identifiers Through Its Virtual Try-On Tool**

42.     LVNA operates its website (https://us.louisvuitton.com/eng-us/homepage) and markets and sells its products (including sunglasses) through that website.[6]

43.     LVNA sells sunglasses and other types of glasses ("eyewear") through its North American website, which allows users and potential customers to use a tool called "Virtual Try-On" which allows a website user to see how LVNA's various eyewear would look on their face.

44.     When a user of LVNA's website views eyewear for which the Virtual Try-On tool is available, LVNA invites that potential customer to access its website's Virtual Try-On feature by presenting a "Try On," button that appears in the top-left or top-right corner of the product image for the product being viewed (as illustrated by the screenshots below).

---

[6] Louis Vuitton English U.S. Homepage, https://us.louisvuitton.com/eng-us/homepage (last accessed Apr. 8, 2022). LVNA's "Privacy Policy" states: "This Privacy Policy ('Policy') describes what personal information Louis Vuitton North America, Inc. ('Louis Vuitton') collects on its websites, mobile applications, stores, and other locations where the Policy is located or referenced (the 'Platform'), and how we treat such information." Privacy Policy, available at https://us.louisvuitton.com/eng-us/legal-notice (last accessed Apr. 8, 2022).



45.     LVNA website users—including Plaintiff and the other Class members—are also able to filter the sunglasses sold by LVNA on its product page to only include sunglasses that a website user can virtually try on using the Virtual Try-On tool.



46.     When website users click the "Try On" button on LVNA's website, the website activates its Virtual Try-On overlay, which uses the user's computer or phone camera to display, on LVNA's website, a real-time image of themselves wearing one of the various sunglasses products they sell.

47.     LVNA's Virtual Try-On tool automatically activates the users' webcams, so that their real-time image appears as soon as they click the "Try On" button.

48.     Once the webcam is on, the user will see their LVNA eyewear selections placed on their face, with the image moving and changing angles, in real time, to comport with the user's facial movements and adjustments.

49.     The Virtual Try-On feature is able to accurately detect, in an instant, where eyewear should be placed on a website visitor's face, and moves the eyewear with the user's movements to ensure that it appears as if the user is actually wearing the eyewear.

50.     LVNA also gives its website users—including Plaintiff and the other Class members—the option to take a photo of the product displayed on their faces, to save the image on their computers or smartphones for sharing or later review.

51.     In addition to or instead of using the real-time Virtual Try-On feature on LVNA's website—which requires a smartphone or computer camera—a website user may, instead, upload a photo of his or her face, after which LVNA will place the eyewear in the correct place on the user's photograph. Uploading a photo still requires the use of facial scans to determine the correct placement of the glasses on a user's face.

52.     The Virtual Try-On Tool on LVNA's website is powered by an application embedded in LVNA's product webpages, which was created by FittingBox. LVNA incorporates FittingBox's proprietary technology into its website to collect and process the user's facial geometry, which allows, in real time, the proper placement of the eyeglasses on the user's face.

53.     The Virtual Try-On Tool on LVNA's website can also capture the user's facial geometry from photos, regardless of whether the photo is taken by web or phone camera while using the Virtual Try-On tool, or on a photo uploaded to the tool. These facial-geometry scans are used to identify the shape and features of the user's face to accurately, and virtually, overlay the eyewear onto the user's facial image.

54.     LVNA directs users to use its Virtual Try-On tool, which collects their biometric information and facial scans, and sends it to the address listed below:



METHOD: POST +

URL

+ https://detectionservice-v5.fittingbox.com/simpledetection/300/fitmix_oeRZCSOdql9zwegXkL1fpjS9y2V9MW4p4RoqrTID_20211017T09415623 4

55.     An analysis of the data sent from the user's device to those servers while using the

Virtual Try-On tool on LVNA's website indicates that LVNA is enabling and facilitating the

collection and storage of its customers' biometric data.

```
                                          32.1 kB   JSON ⌄   REQUEST BODY  ⌃

1 ⌄ {
2   ⌄   "views": [
3     ⌄     {
4               "referenceCameraIndex": 0,
5     ⌄         "recognitionSceneDatas": [
6       ⌄         {
7                   "inputImage": "/9j/4AAQSkZJRgABAQAAAQABAAD/
         2wBDAAoHBwgHBgoICAgLCgoLDhgQDg8NDh0VFhEYIx8lJCIfIiEmKzcvJik0KSEiME
         ExNDk7Pj4+JS5ESUM8SDc9Pjv/
         2wBDAQoLCw4NDhwQEBw7KCIoOzs7Ozs7Ozs7Ozs7Ozs7Ozs7Ozs7Oz
         s7Ozs7Ozs7Ozs7Ozs7Ozv/wAARCAHgAoADASIAAhEBAxEB/
         8QAHwAAAQUBAQEBAQEAAAAAAAAAAAECAwQFBgcICQoL/
         8QAtRAAAgEDAwIEAwUFBAQAAAF9AQIDAAQRBRIhMUEGE1FhByJxFDKBkaEII0KxwRV
         S0FAkM2JyggkKFhcYGRolJicoKSo0NTY3ODk6Q0RFRkdISUpTVFVWV1hZWmNkZWZna
         Glqc3R1dnd4eXqDhIWGh4iJipKTlJWWl5iZmqKjpKWmp6ipqrKztLW2t7i5usLDxMX
         Gx8jJytLT1NXW19jZ2uHi4+Tl5ufo6erx8vP09fb3+Pn6/
         8QAHwEAAwEBAQEBAQEBAQAAAAAAAAECAwQFBgcICQoL/
         8QAtREAAgECBAQDBAcFBAQAAQJ3AAECAxEEBSExBhJBUQdhcRMiMoEIFEKRobHBCSM
         zUvAVYnLCRhgZkNOEl8RcYGRomJygpKjU2Nzg5OkNERUZHSElKU1RVVldYWVpjZGVmZ
         2hpanN0dXZ3eHl6goOEhYaHiImKkpOUlZaXmJmaoqOkpaanqKmqsrO0tba3uLm6wsP
         ExcbHyMnK0tPU1dbX2Nna4uPk5ebn6Onq8vP09fb3+Pn6/
         9oADAMBAAIRAxEAPwDqakXkUzvTk5IsCOaVaVhQOvNAgyInZIp5PNACZpRRiik
         AoqaJ8HrUIztlOKYEsjZ61EeRTmOaaAKGhUlONGKQDcuUkWigB2aUGm9qcKY
         Ct0NZes3jWOkTKXECQYCcZ5JxWk/wB01znjCbZp0EAPLyZP0AoWrEWfDd/
         c6jazS3RUrGwAIXHbJ/pS6X4gj1O+
```

56.     The above HTTP request shows the user's image is translated into Base 64 code,

then sent to an outside server. Using a "Base 64 to image" decoder on the code transmitted yields

the user's image. This code, in Base 64, is collected and stored on the outside server, not on the

user's device.

57.     But for LVNA's website, consumers—including Plaintiff and the other Class

members—would not have had their biometric information collected, stored, and processed.

LVNA causes the capturing and processing of its website users' biometric identifiers, extracted from the users' images while using the Virtual Try-On tool on LVNA's website.

58.     LVNA's website extracts the user's biometric data, which is combined with data necessary to show LVNA's eyewear on the user's face, before that data is repackaged and sent back to the user's device (shown below).

```json
"recognitionSceneDatas": [
  {
    "cameraFocal": {
      "x": 595.2000122070312,
      "y": 595.2000122070312
    },
    "cameraCenterPoint": {
      "x": 320,
      "y": 240
    },
    "eyesPoints": [
      {
        "x": 343,
        "y": 234
      },
      {
        "x": 417.5,
        "y": 233.5
      }
    ],
    "detectedPoints": [
      {
        "x": 294,
        "y": 230
      },
```

59.     LVNA does not inform its website users using its website's Virtual Try-On technology (in writing or otherwise)—including Plaintiff and the other Class members—that its website will capture, transfer, and facilitate the processing and storage of facial geometry—a biometric identifier that BIPA specifically protects—or the specific purpose and length of term for which it is collecting, facilitating the storing of, or using of such data.

60.     Nor does LVNA obtain its website users'—including Plaintiff and the other Class members'—informed, written consent before capturing or collecting such data.

61.     There is no approval, agreement, or confirmation process that a LVNA website user is required to go through to use the Virtual Try-On tool, and LVNA provides no warning that it is about to facilitate the capturing and storage of the user's biometric data.

62.     In further contravention of BIPA, LVNA also does not have a publicly-available written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers or biometric information obtained from its website users, including Plaintiff and the other Class members.

## CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this action as a class action pursuant to Rules 23(a), 23(b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class defined as:

> All persons whose biometric identifiers were captured by LVNA through use of the Virtual Try-On tool on Defendant's websites, including us.louisvuitton.com, while residing in Illinois from [years] years preceding the date of the filing of this action to the present.

64.     Excluded from the Class are LVNA and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

65.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

66.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The proposed Class is sufficiently numerous that individual joinder of all Class members is impracticable. While Plaintiff believes that there are not less than one hundred thousand (100,000) Class members, the precise

16

number of Class members is presently unknown to Plaintiff, but may be ascertained from LVNA's

books, records, and electronically stored information. Class members may be notified of the

pendency of this action by recognized, Court-approved notice dissemination methods, which may

include U.S. Mail, electronic mail, Internet postings, and/or published notice.

67.     **Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2)**

**and 23(b)(3).** This action involves common questions of law and fact, which predominate over

any questions affecting only individual Class members, including, without limitation:

a.     Whether LVNA qualifies as a "private entity" as defined by 740 Ill. Comp.
Stat. 14/10;

b.     Whether LVNA captures, collects, stores, or distributes information that
qualifies as "biometric information" or "biometric identifiers" of users of
the Virtual Try-On tool on LVNA's website, as defined by 740 Ill. Comp.
Stat. 14/10 and 740 Ill. Comp. Stat. 14/15, *et seq.*;

c.     Whether LVNA developed or made publicly available a written policy
establishing a retention schedule and guidelines for destroying its Virtual
Try-On tool users' biometric information and biometric identifiers, 740 Ill.
Comp. Stat. 14/15(a) requires;

d.     Whether LVNA obtained an executed written release from each user of
LVNA's Virtual Try-On tool before capturing their biometric information
and biometric identifiers, as 740 Ill. Comp. Stat. 14/15(b) requires;

e.     Whether LVNA, previously or on an ongoing basis, collected, captured,
purchased, received through trade, or otherwise obtained its website users'
biometric identifiers or biometric information through its Virtual Try-On
tool on its website, in violation of 740 Ill. Comp. Stat. 14, *et seq.*;

f.     Whether LVNA's conduct was and is willful, reckless, or negligent;

g.     The appropriate measure of damages to award Plaintiff and the other Class
members; and

h.     The appropriate injunctive relief to which Plaintiff and the other Class
members are entitled.

68.     **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are

typical of the other Class members' claims because Plaintiff and each of the other Class members

17

used the same Virtual Try-On tool on LVNA's website, through which LVNA collected, captured, purchased, received through trade, or otherwise obtained their biometric identifiers or biometric information, and did not inform Plaintiff or the other Class members of such collection, capture, purchase, receiving through trade, or otherwise obtaining of such biometric identifiers or biometric information, and did not obtain written consent for this same capture, collection, purchase, receiving through trade, or otherwise obtaining of biometric information or biometric identifiers from Plaintiff or the other Class members.

69.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class members who she seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where a defendant breached statutory obligations, and Plaintiff intends to vigorously prosecute this action. Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

70.    **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** LVNA acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and/or declaratory relief, as described below.

71.    **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action

device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Violation of 740 Ill. Comp. Stat. 14/15(b)
### (Failure to Inform in Writing and Obtain Written Release from Users Prior to Capturing, Collecting, or Storing Biometric Identifiers)

72.     Plaintiff reasserts, realleges, and incorporates by reference each of the allegations contained in Paragraphs 1 through 71 (above), as though asserted and alleged herein.

73.     Plaintiff brings this claim individually and on behalf of the other Class members.

74.     The us.LouisVuitton.com Virtual Try-On technology captured—and continues to capture—Plaintiff's and the other Class members' facial geometry information.

75.     Facial geometry is a biometric identifier protected by BIPA.

76.     BIPA prohibits private entities like LVNA from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining website users' biometric identifiers or biometric information without first informing them in writing of such activities; informing them in writing of the specific purpose and length of term for which biometric identifiers or biometric information are being collected, stored, and used; and obtaining a written release executed by the websites users whose biometric identifiers or biometric information is being collected.

77.     LVNA does not inform its customers in writing that their biometric information will be collected through the use of the Virtual Try-On tool; does not inform them in writing of the specific purpose and length of time that their biometric information will be collected, stored, and used; and does not obtain a written release from its customers informing them that, by using LVNA's Virtual Try-On tool, their biometric information and biometric identifiers will be collected.

78.     Upon information and belief, LVNA is continuing to collect, capture, and store biometric information and biometric identifiers of its website's users, without the specific permission required by BIPA.

79.     Plaintiff and the other Class members have been injured by LVNA's conduct alleged herein, which injury includes the unknowing loss of control of their most unique biometric identifiers, and violations of their privacy due to LVNA's collection, capture, and storage of their biometric information and biometric identifiers, and the sharing of that data with third parties; accordingly, the imposition of statutory damages under BIPA is appropriate here.

<u>SECOND CAUSE OF ACTION</u>
**Violation of 740 Ill. Comp. Stat. 14/15(a)**
**(Failure to Develop and Make Publicly Available a Written Policy for Retention and**
**Destruction of Biometric Identifiers)**
**Damages and Injunctive Relief**

80.     Plaintiff reasserts, realleges, and incorporates by reference each of the allegations contained in Paragraphs 1 through 71 (above), as though asserted and alleged herein.

81.     Plaintiff brings this claim individually and on behalf of the other Class members.

82.     The us.LouisVuitton.com Virtual Try-On operates by capturing the facial geometry of users of LVNA's Virtual Try-On tool, including Plaintiff and the other Class members.

83.     Facial geometry is a biometric identifier or biometric information, protected by BIPA.

84.     BIPA requires private entities, like LVNA, in possession of biometric identifiers or biometric information to develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has

been satisfied or within three years of the individual's last interaction with the private entity, whichever occurs first.

85.     LVNA did not develop, possess, or publish to its website users—including Plaintiff and the other Class members—such a written policy at any time during its capture, collection, or storage of Plaintiff's and the other Class members' biometric information or biometric identifiers, which LVNA caused to be obtained through their use of the Virtual Try-On tool on LVNA's website, us.LouisVuitton.com.

86.     As a result, LVNA denied Plaintiff and the other Class members of their rights under BIPA to be made aware of their retention and destruction policies as to their biometric identifiers. Additionally, LVNA's failure to develop the required retention and destruction policies placed Plaintiff's and the other Class members' sensitive biometric identifiers at risk of compromise or illicit use by LVNA's and others.

87.     Plaintiff and the other Class members have been injured by LVNA's conduct, as alleged herein, which injury includes the unknowing loss of control of their most unique biometric identifiers, and violations of their privacy due to LVNA's collection, capture, and storage of their biometric information and biometric identifiers, and its sharing of that data with foreign companies; accordingly, the imposition of statutory damages under BIPA is appropriate here.

88.     Moreover, an injunction is warranted pursuant to 740 Ill. Comp. Stat. 14/20(4), requiring LVNA to develop a written policy, and inform Plaintiff and the other Class members of that policy, after ensuring that their information is destroyed.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter an order granting the following relief:

a.     Finding that this action satisfies the requirements for maintenance as a class action as set forth in Rule 23 of the Federal Rules of Civil Procedure and certifying the class defined herein;

b.     Appointing Plaintiff as representative of the Class and her undersigned counsel as class counsel;

c.     Entering judgment in favor of Plaintiff and the other Class members and against LVNA;

d.     Awarding Plaintiff and the other Class members liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation, or actual damages, whichever is greater, for each of LVNA's BIPA violations;

e.     Issuing an injunction ordering LVNA to comply with BIPA and to disclose to Plaintiff and the other Class members whether LVNA possesses their biometric identifiers or biometric information, LVNA's uses of their biometric information or biometric identifiers; and LVNA's retention and destruction policies regarding their biometric information or biometric identifiers;

f.     Issuing an injunction ordering LVNA to comply with BIPA by preparing, producing, or adopting a publicly published retention and destruction policy for the biometric information or biometric identifiers that it collects;

g.     Awarding reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses, as provided for in 740 Ill. Comp. Stat. 14/20; and

h.     Granting such other and further relief as the Court deems appropriate.

## JURY TRIAL REQUESTED

Plaintiff, individually and on behalf of the other Class members, requests a trial by jury on all claims so triable.

Dated: April 8, 2022                    Respectfully submitted

*/s/David A. Straite*
DAVID A. STRAITE
dstraite@dicellolevitt.com
**DiCELLO LEVITT GUTZLER LLC**
One Grand Central Place
60  East 42nd Street, Suite 2400
New York, New York 10165
Telephone: (646) 933-1000

ADAM J. LEVITT
alevitt@dicellolevitt.com
AMY E. KELLER*
akeller@dicellolevitt.com
JAMES A. ULWICK*
julwick@dicellolevitt.com
SHARON CRUZ*
scruz@dicellolevitt.com
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900

JAMES J. PIZZIRUSSO*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 540-7200

STEVEN M. NATHAN
snathan@hausfeld.com
**HAUSFELD LLP**
33 Whitehall St., 14th Floor
New York, New York 10004
Telephone: (646) 357-1100

*Counsel for Plaintiff and the Proposed Class*

*\*Pro Hac Vice Admission Applications Forthcoming*