**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

PAULA THERIOT and CHERYL DOYLE,
individually and on behalf of all others similarly
situated,

                Plaintiffs

        vs.

LOUIS VUITTON NORTH AMERICA, INC.,

             Defendant.

Civil Action No.: 1:22-CV-02944-DLC

**MEMORANDUM IN SUPPORT OF
DEFENDANT LOUIS VUITTON
NORTH AMERICA, INC.'S MOTION
TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT UNDER
FED. R. CIV. PROC. 12(B)(1) AND
12(B)(6)**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................................... 1

THE COMPLAINT'S ALLEGATIONS .......................................................................... 3

A.   The Virtual Try-On Tool ........................................................................................ 3

B.   The Activities of FittingBox .................................................................................. 3

LEGAL BACKGROUND AND CLAIMS ...................................................................... 4

I.   Plaintiffs Lack Standing for Their Section 15(a) Claim .......................................... 6

    A.   Legal Standard for Motions Under Fed. R. Civ. Proc. 12(b)(1). ....................................6

    B.   Plaintiffs Fail to Allege Any Injury-In-Fact Sufficient to Establish Article III Standing. ...................................................................................................................7

II.   All Plaintiffs' Claims Should Be Dismissed for Failure to State a Claim. ......................... 10

    A.   Legal Standard for Motions Under Fed. R. Civ. Proc. 12(b)(6). ...................................10

    B.   Plaintiffs' Section 15(a) Claim Should Be Dismissed Because They Do Not and Cannot Plausibly Allege LVNA "Possessed" Biometric Data....................................................11

    C.   Plaintiffs' Section 15(b) Claim Should Be Dismissed Because the FAC Does Not and Cannot Plausibly Allege LVNA Took an "Active Step" to "Collect" Biometric Data. .13

    D.   Both of Plaintiffs' Claims Should Be Dismissed Because They Fail to Allege Any Violation in the State of Illinois. ....................................................................................16

CONCLUSION................................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................11

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   216 Ill.2d 100 (Ill. 2005)............................................................................................16

*Bryant v. Compass Grp. USA, Inc.*,
   958 F.3d 617 (7th Cir. 2020) ...................................................................7, 8, 9, 10

*Chevron Corp. v. Donziger*,
   833 F.3d 74 (7th Cir. 2016) ..........................................................................................7

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)......................................................................................................8

*Garner v. Buzz Finco LLC*,
   No. 3:21-CV-50457, 2022 WL 1085210 (N.D. Ill. Apr. 11, 2022)...........................8

*Heard v. Becton, Dickinson & Co.*,
   440 F. Supp. 3d 960 (N.D. Ill. 2020).................................................11, 12, 13, 15

*Jacobs v. Hanwha Techwin America, Inc.*,
   No. 1:21-CV-00866, 2021 WL 3172967 (N.D. Ill. July 27, 2021) ..................12, 15

*LG Electronics USA, Inc. v. Whirlpool Corp.*,
   809 F. Supp. 2d 857 (N.D. Ill. 2011) ......................................................................16

*Maddox v. Bank of New York Mellon Tr. Co., N.A.*,
   19 F.4th 58 (2d Cir. 2021) ..........................................................................................9

*McGoveran v. Amazon Web Servs., Inc.*,
   No. 1:20-CV-01399, 2021 WL 4502089 (D. Del. Sept. 30, 2021)
   ...............................................................................................................16, 17, 18, 19

*Monroy v. Shutterfly, Inc.*,
   No. 1:16-CV-10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017)........................16

*Namuwonge v. Kronos*,
   418 F. Supp. 3d 279 (N.D. Ill. 2019) ................................................................13, 15

*Parker Madison Partners v. Airbnb, Inc.*,
   283 F. Supp. 3d 174 (S.D.N.Y. 2017)........................................................6, 10, 11

*Patterson v. Respondus, Inc.*,
   No. 20-C-7692, 2022 WL 860946 (N.D. Ill. Mar. 23, 2022) ...................................8

*People v. Ward*,
  215 Ill.2d 317 (2005) ...................................................................................................11

*Santana v. Take-Two Interactive Software, Inc.*,
  717 F. App'x 12 (2d Cir. 2017) .................................................................................9, 10

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
  480 F. Supp. 3d 888 (S.D. Ill. Aug. 19, 2020) ...........................................................8, 9

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
  No. 19-L-311 (St. Clair Cnty., Ill., July 23, 2022)...............................................8, 12, 13

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
  No. 3:20-cv-00046, 2022 WL 3139507 (S.D. Ill. Aug. 5, 2022)...........................8, 13, 14, 15

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)..................................................................................................9

*Vulcan Golf, LLC v. Google Inc.*,
  552 F. Supp. 2d 752 (N.D. Ill. 2008) ........................................................................17

*Woods v. FleetPride, Inc.*,
  No. 1:21-CV-01093, 2022 WL 900163 (N.D. Ill. Mar. 27, 2022) .............................8

**Statutes**

740 ILCS 14/5...............................................................................................................4

740 ILCS 14/10.................................................................................................5, 12, 18

740 ILCS 14/15.................................................................................................5, 11, 13

Fed. R. Civ. Proc. 12...................................................................................6, 10, 19

## PRELIMINARY STATEMENT

Plaintiffs' First Amended Complaint ("FAC") under the Illinois Biometric Information Privacy Act ("BIPA") seeks to accomplish none of the objectives, and meets none of the requirements, of that statute. BIPA was designed to safeguard the collection and storage of "biometric" information, such as fingerprints, in the State of Illinois. This lawsuit against Louis Vuitton North America, Inc. ("LVNA") presents none of these concerns, but instead represents the latest in a series of efforts to expand BIPA far beyond its statutory limitations and convert it into a free-wheeling cash grab, seeking massive statutory damages completely detached from the law's actual text and purpose.

By its terms, BIPA regulates only those private entities that "collect" or "possess" certain biometric data in the State of Illinois. The FAC concedes that LVNA does neither of these things. Instead, it alleges merely that through LVNA's website, consumers can access an "app" created and operated by a third party, FittingBox, that allows consumers to "virtually try on" sunglasses by superimposing an image of sunglasses over an image of the user's face. The FAC admits that it is FittingBox, not LVNA, that collects and processes the data necessary to accomplish this task, which it alleges constitutes "biometric information" under BIPA. Even in Plaintiffs' own telling, LVNA's role is narrowly restricted to "enabling" or "facilitating" the already-transitory collection or storage of data by FittingBox.

These alleged facts are fatal to Plaintiffs' claims. First, as a threshold matter, Plaintiffs cannot establish an Article III injury for at least Count II of the FAC, which alleges that LVNA violated Section 15(a) of BIPA, nor is it clear they have pled such an injury under Count I (alleging violation of Section 15(b)). Plaintiffs allege that LVNA failed to publish to the general public a BIPA-compliant data retention policy, but do not assert any cognizable injury to Plaintiffs beyond

a bare statutory violation.  Federal courts have routinely dismissed identical claims because they do not allege any particularized injury, and Plaintiffs therefore lack standing to assert them. Plaintiffs' Section 15(a) claim (and perhaps its Section 15(b) claim as well) should be dismissed on those grounds.

Second, and more generally, these factual allegations preclude any claim under Section 15(a) (Count II) or Section 15(b) (Count I). Indeed, they establish that any alleged biometric information was collected by FittingBox, a third-party software company, and stored (if at all) on that company's servers. Plaintiffs effectively concede that LVNA *never* possessed, collected, or captured any such information.  By its terms, BIPA does not apply to entities, like LVNA, that do not themselves "collect" or "possess" biometric information.   This distinction is no mere technicality:  the very purpose of BIPA, as Plaintiffs admit, is to ensure that entities that collect or possess biometrics do so with consent and secure that data carefully, because consumers cannot change their fingerprints like they can a password.  That purpose is not served by holding an entity that *never actually collects or possesses* that data liable for massive statutory damages.  In sum, Plaintiffs' legal theory is wholly disconnected from BIPA's text and purpose.

The FAC also fails to state a claim because it does not plausibly allege a BIPA violation in the State of Illinois.  As a matter of Illinois law: (1) BIPA does not purport to apply beyond the state's borders; (2) the fact that Plaintiffs reside in Illinois is insufficient to establish a violation in the State of Illinois; and (3) uploading a photograph cannot, definitionally, constitute a BIPA violation.   The FAC's theory must therefore be that BIPA was violated (if anywhere) on FittingBox's servers – but the FAC does not (and cannot) allege those servers are located in Illinois.

For each of these reasons, Plaintiffs' FAC should be dismissed.

## THE COMPLAINT'S ALLEGATIONS

### A.    The Virtual Try-On Tool

LVNA is a leading "global luxury brand that markets and sells a variety of high-end products," including eyewear. (FAC ¶ 34.)  The Plaintiffs, Cheryl Doyle and Paula Theriot, are both residents of the State of Illinois. (*Id.* ¶¶ 19, 26.)  Both allege that they accessed a "Virtual Try-On feature" through LVNA's website to "try on different pairs of sunglasses." (*Id.*)

According to the FAC, the Virtual Try-On Tool ("VTOT") "allows a website user to see how LVNA's various eyewear would look on their face." (FAC ¶ 51.)  Screenshots in the FAC illustrate how a "Virtual Try On" or "Try On" button is visible on certain product images on the LVNA website. (*Id.* ¶ 52.)  When a user clicks that button, "the website activates its Virtual Try-On overlay, which uses the user's computer or phone camera to display, on LVNA's website, a real-time image of themselves wearing one of the various sunglasses products LVNA sells." (*Id.* ¶ 54.)  The effect is that when the VTOT is active, "it appears as if the user is actually wearing the eyewear." (*Id.* ¶ 57.)

### B.    The Activities of FittingBox

Nevertheless, the FAC admits that the VTOT is "powered by" an application "created by FittingBox." (*Id.* ¶ 58.)  It further admits that the VTOT relies upon FittingBox's "proprietary technology" to "collect and process the user's facial geometry, which allows, in real time, the proper placement of the eyeglasses on the user's face." (*Id.*)[1]

The FAC alleges that the VTOT works by first taking the user's photograph, from a web or phone camera or an image uploaded by the user, and sending it to a FittingBox URL.

---

[1] While not a basis for this Motion, it is significant that even *FittingBox's* conduct, as alleged, amounts to only a transitory scan of a photograph to allow the user to virtually "try on" glasses. This conduct does not implicate the concerns or requirements of BIPA, as LVNA will argue if this matter proceeds.

(*Id.* ¶ 61-62 (screenshot, receiving URL begins: "http://detectionservice-v5.fittingbox.com...").) Next, or perhaps as a means of accomplishing this same step, the "user's image is translated into Base 64 code." (*Id.* ¶ 64.)[2]  The FAC implies that "Base 64" is a computer code for expressing images, explaining that merely "using a 'Base 64 to image' decoder on the code transmitted yields the user's image." (*Id.*)  It alleges this code is "collected and stored on the outside server, not on the user's device." (*Id.*)  The FAC then alleges that from this photograph – which is on a FittingBox server (*id.* ¶ 62) – the user's "biometric data" is "extract[ed]" and "combined with data necessary to show LVNA's eyewear on the user's face, before that data is repackaged and sent back to the user's device." (*Id.* ¶ 66.)

Repeatedly, the FAC concedes that LVNA does not itself capture or store information. It describes LVNA's role in this process as merely "facilitat[ing] the capturing and storage of the user's biometric data." (*Id.* ¶ 69; ¶ 63 ("LVNA is enabling and facilitating the collection and storage" of biometric data).)  Instead, the FAC asserts that "but for LVNA's website," consumers "would not have had their biometric information collected, stored, and processed." (*Id.* ¶ 65.)

## LEGAL BACKGROUND AND CLAIMS

BIPA governs the private collection and use of certain "biometric information" and "biometric identifiers" in the State of Illinois.  It was based upon legislative findings that "biometrics are unlike other unique identifiers used to access finances or other sensitive information" because they are "biologically unique to the individual," and "therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."  740 ILCS 14/5(c).

---

[2] The FAC is ambiguous with respect to whether the Base 64 code is sent from LVNA's website to FittingBox's servers, or from FittingBox's servers to a further "outside server." (*Id.* ¶¶ 62-64.)  As set forth below, this ambiguity is irrelevant to disposition of this Motion.

For these purposes, BIPA regulates two types of information: "biometric identifiers" and "biometric information." 740 ILCS 14/10. As relevant here, BIPA provides that "scan[s] of hand or face geometry" may be "biometric identifiers." *Id.*; *see* FAC ¶¶ 83, 91 (alleging collections of "facial geometry"). But, "photographs" are expressly excluded from the definition of "biometric identifiers." 740 ILCS 14/10. "Biometric information" is defined to include "any information, … based on an individual's biometric identifier used to identify an individual" and to exclude "information derived from items or procedures excluded under the definition of biometric identifiers." *Id.*

BIPA Section 15 identifies conduct that violates the Act. Section 15(a), confusingly made the subject matter of Count II, applies to private entities "in possession" of biometric identifiers or information. 740 ILCS 14/15(a). It provides that such entities must:

> develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

*Id.*

Section 15(b), made the basis of Count I, applies to private entities who "collect, capture, purchase, receive through trade, or otherwise obtain" biometric identifiers or information. 740 ILCS 14/15(b). It provides that no private entity may do so "unless it first" provides a written disclosure of its collection on specified terms, and receives a written release for its collection. *Id.*

## ARGUMENT

## I.     Plaintiffs Lack Standing for Their Section 15(a) Claim.

As a threshold matter, Plaintiffs fail to allege any injury-in-fact sufficient to establish Article III standing for Count II of the FAC, which claims, at most, a bare procedural violation of Section 15(a) of BIPA and an injury common to the general public.  Count II should therefore be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

### A.     Legal Standard for Motions Under Fed. R. Civ. Proc. 12(b)(1).

A claim may be "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Parker Madison Partners v. Airbnb, Inc.*, 283 F. Supp. 3d 174, 178 (S.D.N.Y. 2017) (citation omitted). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (citation omitted).

To show the existence of subject-matter jurisdiction, a plaintiff "must establish first, that it has sustained an injury in fact; second, that the injury was in some sense caused by the opponent's action or omission; and finally, that a favorable resolution of the case is likely to redress the injury." *Id.* at 179 (internal quotations and ellipsis omitted).  "That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id.* at 179-80 (citation omitted).  "When deciding whether a violation of a procedural right granted by statute constitutes an injury-in-fact, a court should consider whether the particular procedural violations alleged entail a degree of risk sufficient to meet the concreteness requirement" to show an injury-in-fact. *Id.* at 180 (internal quotations and ellipsis omitted).

**B.      Plaintiffs Fail to Allege Any Injury-In-Fact Sufficient to Establish Article III Standing.**

Count II alleges that LVNA has failed to develop "a written policy, made available to the public," regarding its alleged possession of biometric data as required by Section 15(a). (FAC ¶¶ 93-94.)  It does not allege that either of the Plaintiffs has suffered any concrete injury unique to her individually, but that they suffer the same theoretical risk of harm as every other member of the public.  Federal courts have repeatedly held that Section 15(a) claims such as these fail to allege concrete, particularized injury, and must be dismissed.

As the Seventh Circuit has explained, Section 15(a) is "not part of the informed-consent regime" of BIPA.  *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020).  "In contrast to the obligations set forth under section 15(b), the duty to disclose under section 15(a) is owed to the public generally, not to particular persons whose biometric information the entity collects."  *Id.*

This distinction is critical to the standing analysis.  First, it means that any claimed injury related to the Plaintiffs' actual submission of biometric data is irrelevant to their standing to pursue a Section 15(a) claim because there is no "causal nexus between [LVNA's alleged] conduct and the injury."  *See Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (7th Cir. 2016) (citations omitted); *see also Bryant*, 958 F.3d at 626-27 (dismissing Section 15(a) claim for lack of standing despite plaintiff's allegations regarding the "loss of the power and ability to make informed decisions about the collection, storage, and use of her biometric information").

Second, it means that the only alleged injuries that remain flow from a duty "owed to the public generally," and therefore not "particularized" in a manner giving rise to Article III standing. *Id.*  For these reasons, federal courts routinely dismiss or remand Section 15(a) claims that are predicated upon the failure to publish a Section 15(a)-compliant policy for lack of standing.  *E.g.*,

*Garner v. Buzz Finco LLC*, No. 3:21-CV-50457, 2022 WL 1085210, at *3–4 (N.D. Ill. Apr. 11, 2022) (remanding Section 15(a) claim for lack of standing); *Woods v. FleetPride, Inc.*, No. 1:21-CV-01093, 2022 WL 900163, at *5 (N.D. Ill. Mar. 27, 2022) (same); *Patterson v. Respondus, Inc.*, No. 20-C-7692, 2022 WL 860946, at *7, 17 (N.D. Ill. Mar. 23, 2022) (dismissing Section 15(a) claim for lack of standing because "a violation of section 15(a)'s publication requirement does not, by itself, inflict an Article III injury"); *Stauffer v. Innovative Heights Fairview Heights, LLC*, 480 F. Supp. 3d 888, 899 (S.D. Ill. Aug. 19, 2020) ("*Stauffer I*")[3] (remanding Section 15(a) claim for lack of standing because Section 15(a) "covers a duty to the *public* as opposed to the individual").

Plaintiffs' Section 15(a) claims fall squarely within this precedent. The FAC attempts to fabricate a concrete, particularized injury based on Plaintiffs' alleged submission of biometric data. (*See* FAC ¶¶ 95-96 (alleging failure to publish a policy "placed Plaintiffs' and the other Class members' sensitive biometric identifiers at risk of compromise or illicit use … which injury includes the unknowing loss of control of their most unique biometric identifiers…").) But those injuries relate, at most, to the conduct alleged to be at issue in Plaintiffs' Section 15(b) claims, not their Section 15(a) claims. *See Bryant*, 958 F.3d at 626-27 (dismissing Section 15(a) claim for lack of standing despite plaintiff's allegations regarding the "loss of the power and ability to make informed decisions about the collection, storage, and use of her biometric information"); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[O]ur standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press."). The only injuries alleged

---

[3] Three *Stauffer* decisions are relevant to this Motion. Their citations are provided in the course of the brief, but the key substantive issues are as follows: *Stauffer I* addresses standing under Section 15(a), and resulted in remand of Section 15(a) claims to state court, while permitting Section 15(b) claims to proceed in federal court. 480 F. Supp. 3d at 907. A 2022 Illinois state-court decision (the "*Stauffer* State Opinion") addresses the definition of "possession" for purposes of Section 15(a). *Stauffer v. Innovative Heights Fairview Heights, LLC*, No. 19-L-311 (St. Clair Cnty., Ill., July 23, 2022), Ex. A, at 2-3. And a 2022 federal-court decision ("*Stauffer II*") addresses the definition of "collection" for purposes of Section 15(b). *Stauffer v. Innovative Heights Fairview Heights, LLC*, No. 3:20-cv-00046, 2022 WL 3139507, at *4 (S.D. Ill. Aug. 5, 2022).

in connection with LVNA's alleged violation of Section 15(a) are the loss of Plaintiffs' "rights under BIPA to be made aware of their retention and destruction policies as to their biometric identifiers."  (FAC ¶ 95.)  Federal courts have repeatedly held that this generic, public harm is not a particularized injury.  *E.g.*, *Bryant*, 958 F.3d at 626.

Additionally, none of the FAC's alleged harms that are fairly traceable to a violation of Section 15(a) are concrete.  It is axiomatic that "plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm," but must allege an actual "concrete harm due to the [Defendant's] violation" above and beyond any prescribed statutory penalty. *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021).  Again, because Section 15(a) is not part of BIPA's informed-consent regime and instead creates a duty to the general public, the FAC cannot rely upon harms traceable to Plaintiffs' submission of biometric data to establish standing.

At best, then, Plaintiffs are left with "bare procedural violations, divorced from any concrete harm," *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2213 (2021) (citation and internal bracketing omitted).  These are insufficient as a matter of law to establish standing.  *See also Stauffer I*, 480 F. Supp. 3d at 899-900 (remanding where Plaintiff "has not enumerated how Defendant Pathfinder's alleged Section 15(a) violation impacted her thinking or potentially changed her behavior" and "has not articulated an additional injury, beyond a violation of the statute, to satisfy the requirements for Article III standing"); *Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12, 16 (summary order) (2d Cir. 2017) (alleged "bare procedural violation" of BIPA Section 15(a) did not support federal subject-matter jurisdiction, particularly

in the absence of plausible allegations that the plaintiffs' biometric data "will be misused or disclosed").[4]

Because Plaintiffs cannot allege a concrete, particularized injury for their Section 15(a) claims, Count II should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

## II.     <u>All Plaintiffs' Claims Should Be Dismissed for Failure to State a Claim.</u>

Aside from jurisdictional defects, Plaintiffs' FAC vitiates their claim that LVNA violated BIPA in three ways:  (1) it acknowledges that LVNA never "possessed" any biometric data as required to state a Section 15(a) or 15(b) claim; (2) it acknowledges that LVNA never took an "active step" to "collect" any biometric data as required to state a Section 15(b) claim; and (3) it fails to allege that any violations occurred where BIPA applies, i.e., in the State of Illinois.

### A.     Legal Standard for Motions Under Fed. R. Civ. Proc. 12(b)(6).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Parker Madison*, 283 F. Supp. 3d at 178 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, a complaint "must contain more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* at 179 (quoting *Iqbal*, 556 U.S. at 678).  Indeed, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Whether the factual allegations state a plausible claim "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action

---

[4] Notably, the court in *Santana* also found that it lacked jurisdiction over a Section 15(b) claim because "[n]o reasonable person …  would believe that the [facial-scan] feature was conducting anything other than" a facial geometry scan. 717 F. App'x at 15-16. The Seventh Circuit apparently disagrees on this point, as the authorities discussed *supra*, among others, have typically allowed similar Section 15(b) claims to proceed in federal court. *See, e.g.*, *Bryant*, 958 F.3d at 626 (alleged failure to abide by the "informed consent" regime of Section 15(b) held a sufficiently particularized injury-in-fact). The Court must issue a determination on this question, given that the issue of subject-matter jurisdiction is non-waivable.

and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Id.* (quoting *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)).

**B.     Plaintiffs' Section 15(a) Claim Should Be Dismissed Because They Do Not and Cannot Plausibly Allege LVNA "Possessed" Biometric Data.**

By its terms, Section 15(a) applies to entities "in possession of" "biometric identifiers" or "biometric information."  740 ILCS 14/15(a); *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020).  BIPA does not define "possession."  *See* 740 ILS 14/15(a); *Heard*, 440 F. Supp. 3d at 968 (recognizing same).  As a result, Illinois law requires courts look to the "popularly understood meaning," or its "settled legal meaning" if one exists.  *Heard*, 440 F. Supp. 3d at 968 (citation omitted).  In the context of a criminal statute referencing but not defining "possession," the Illinois Supreme Court has held that "'possession,' as ordinarily understood, occurs when a person has or takes control of the subject property or holds the property at his or her disposal." *People v. Ward*, 215 Ill.2d 317, 325 (2005).

Here, Plaintiffs never allege that LVNA actually possessed any regulated biometric data at any time.  Instead, they allege that FittingBox's "proprietary technology" does the "collect[ing] and process[ing]" at issue.  (FAC ¶ 58.)  To be sure, the FAC makes several bare, box-checking declarations that LVNA is "in possession of biometric identifiers."  (FAC ¶ 93; *see also* FAC ¶ 44 ("companies like LVNA [] that possess biometric identifiers or biometric information must:…").)  But these "mere labels and conclusions" and "formulaic recitations" are irrelevant under *Iqbal*. 556 U.S. at 678; *see also Heard*, 440 F. Supp. 3d at 968 (rejecting "allegations concerning possession [that] merely parrot the statutory language").  This is particularly true here as the FAC, at each turn where a BIPA plaintiff would ordinarily detail the ___defendant's___ possession, instead explains how ___non-party FittingBox___'s server receives the data they allege to be biometric.

11

(FAC ¶ 62 (alleging that "biometric information and facial scans" are sent "to the address listed below," and listing a FittingBox web address).)[5]  At best, Plaintiffs can assert only that LVNA is doing nothing except "enabling and facilitating the collection and storage of its customers' biometric data," which is insufficient for liability under BIPA.  (FAC ¶ 63.)

Courts have repeatedly rejected attempts such as these to expand BIPA liability to parties not actually "in possession" of biometric data.  For example, in *Heard*, the plaintiff alleged that the manufacturer of an automated medication dispensing system with fingerprint authentication had taken "possession" of his fingerprints because the hospital the plaintiff worked for required him to use the machine in the course of his employment.  *Heard*, 440 F. Supp. 3d at 963.  The court dismissed the Section 15(a) claim because plaintiff's generic allegations that the manufacturer "stored" his fingerprints failed to plausibly allege the manufacturer "exercised any form of control over the data or that it held the data at its disposal."  *Id.* at 968 (citation and internal quotations and bracketing omitted).  Similarly, in the *Stauffer* State Opinion, an Illinois state court dismissed Section 15(a) claims against a franchisor who never actually took control of fingerprint data collected by its franchisee.  Exhibit A, at 2-3.  It emphasized that the entire point of Section 15(a) was to require a written data retention policy with certain minimum destruction periods, but "without actual direct possession of the data, [the franchisor] cannot destroy it."  *Id.* at 3.  Finally, in *Jacobs v. Hanwha Techwin America, Inc.*, No. 1:21-CV-00866, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021), the court dismissed Section 15(a) claims where the plaintiff merely "parrot[ed]" the statutory language" and failed to "say whether defendant could freely access the data, or even

---

[5] As noted in footnote 2 above, the FAC is ambiguous about whether it claims the photograph allegedly translated into "Base 64 code" is sent from LVNA's website to FittingBox's servers, or from FittingBox's servers to a further "outside server."  (*Id.* ¶¶ 62-64.)  Even if the FAC were construed to allege LVNA's website performed this function, the FAC alleges that this data is only a photograph of the user's image, thereafter sent to FittingBox's server.  (FAC ¶ 64 (when translated, this data "yields the user's image").)  As a result, under this theory, LVNA only possessed the user's photograph, and photographs are definitionally not "biometric information."  740 ILCS 14/10.

how defendant allegedly received it," and therefore failed to plausibly allege "the defendant was 'in possession of'" biometric data.

Plaintiffs' Section 15(a) claims are barred by this precedent.  The FAC contains only bare conclusions that LVNA "possessed" the biometric data at issue.  Wherever it attempts to present specifics, it proves only that FittingBox did so and retreats to the position that "but for LVNA's website," FittingBox would not have received and thereby "possessed" the information.  (*See* FAC ¶ 65.)  But Section 15(a) does not apply to entities that "facilitate" or "enable" the collection of biometric data by others – by its express terms, it applies only to private entities actually "in possession of" biometric data.  740 ILCS 14/15(a).  As the *Stauffer* State Opinion explains, that distinction is at the core of BIPA's purpose – a private party such as LVNA that does not directly possess biometric data has no need, and in fact no ability, to safeguard that data by articulating a schedule for its destruction.  Plaintiffs' attempt to expand Section 15(a) liability beyond its plain language should be rejected.

**C.**     **Plaintiffs' Section 15(b) Claim Should Be Dismissed Because the FAC Does Not and Cannot Plausibly Allege LVNA Took an "Active Step" to "Collect" Biometric Data.**

Simple statutory construction similarly dooms Plaintiffs' Section 15(b) claims.  Section 15(b) provides that no private entity may "collect, capture, purchase, receive through trade, or otherwise obtain" regulated biometrics without certain disclosures.  740 ILCS 14/15(b).  Courts have repeatedly held that "collection" under Section 15(b) entails more than the mere "possession" required under Section 15(a).  *Heard*, 440 F. Supp. 3d at 965 ("[M]ere possession of biometric data is insufficient to trigger Section 15(b)'s requirements."); *see also Namuwonge v. Kronos*, 418 F. Supp. 3d 279, 283 (N.D. Ill. 2019) ("BIPA imposes distinct sets of obligations on possessors and collectors of biometric data," and the obligations upon collectors are "heightened"); *Stauffer II*, 2022 WL 3139507, at *4 (recognizing the distinction between "possession" and "collection"

13

intended by the Illinois legislature in drafting BIPA, and holding affirming that "courts have recognized that possession of biometric data alone does not subject an entity to § 15(b)'s requirements") (citations omitted).  Specifically, courts have held that "collection" requires the defendant to have "take[n] an *active step* to collect, capture, or otherwise obtain the plaintiff's biometric information."  *Stauffer II* at *4 (citing *Heard*, 440 F. Supp. 3d at 966 (similar) and *Jacobs*, 2021 WL 3172967 at *2 (similar)).  To survive dismissal, the FAC must plausibly allege LVNA played "more than a passive role in the process."  *Stauffer II* at *5 (citation omitted).

Here, as previously stressed, the FAC does not allege LVNA even "possessed" regulated biometrics, let alone "collected" that information.  (*See supra* Section II.B.)  The FAC's failure to plausibly allege "possession" necessarily means it cannot plausibly allege the greater act of "collection."  *See Stauffer II* at *4 ("[C]ourts have recognized that possession of biometric data alone does not subject an entity to § 15(b)'s requirements.") (citations omitted).

Regardless, Plaintiffs cannot allege the additional "active step" necessary to plead a claim under Section 15(b).  Plaintiffs expressly allege that it is FittingBox – not LVNA – that operates the application with "proprietary technology" that "power[s]" the VTOT.  (FAC ¶ 58.)  It alleges that FittingBox's technology "collect[s] and process[es] the user's facial geometry."  (*Id.*)  It alleges that the user's photograph is transmitted to a FittingBox server for processing.  (FAC ¶ 62.)  And it alleges that LVNA's role is limited to "enabling and facilitating the collection" of customer biometric data – not actually "collecting" it itself.  (FAC ¶ 63.)  Aside from its recitations of legal elements, each of the well-pled allegations of the FAC makes clear that Plaintiffs are alleging that FittingBox, not LVNA, took the active steps to collect the data at issue, and LVNA's role – if any – could not have amounted to more than passively "enabling" FittingBox to do so.

14

Federal courts have repeatedly dismissed Section 15(b) claims with even stronger allegations than these.  For example, in *Stauffer II*, the franchisor required its franchisee to use a fingerprint-scanning timecard technology and retained an unlimited contractual right to access all information in that system.  *Stauffer II*, 2022 WL 3139507, at *2.  Nevertheless, the court dismissed the Section 15(b) claim because the plaintiff never adequately pled that the franchisor "ever did anything to extract or obtain the biometric information" from the timecard technology system.  *Id.* at *6.  In *Namuwonge*, 418 F. Supp. 3d at 286, 282, the court dismissed a Section 15(b) claim against a defendant that actually manufactured the fingerprint timecard system at issue because the plaintiff's "more precise allegation[s]" made clear that it was the employer who took the "active step" to collect the fingerprints by requiring all employees to use the timecard system.  *See also Heard*, 440 F. Supp. 3d at 966-67 (manufacturer not liable for "active step" of collection where employer required employees to use system as a condition of employment and complaint failed to "allege how the data made its way to [the defendant's] systems").

At its core, the FAC alleges that FittingBox not only possessed, but collected the VTOT data and that LVNA merely "enabled" it to do so.  As a matter of law, this is inadequate to establish the "active step" of "collection" necessary to sustain a Section 15(b) claim.  *See Jacobs*, 2021 WL 3172967, at *3 (dismissing Section 15(b) claim against seller of cameras where "a complete reading of the complaint makes clear" that "the active collector and processor of the data" is another defendant).  Like other efforts to expand BIPA to parties that do not actually "possess" or "collect" biometric data, this claim cannot serve any of BIPA's actual purposes:  no public interest would be served by requiring LVNA to mislead the public by stating it collects biometrics when it does not actually do so.  Plaintiffs' Section 15(b) claim should be dismissed.

**D.    Both of Plaintiffs' Claims Should Be Dismissed Because They Fail to Allege Any Violation in the State of Illinois.**

Plaintiffs also fail to state a claim because they do not, and cannot, allege that any violation of BIPA occurred in the State of Illinois.

Under Illinois law, a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 184-85 (Ill. 2005) (citation omitted).  Courts have repeatedly held that "none of BIPA's express provisions indicates that the statute was intended to have extraterritorial effect," and therefore, it does not. *Monroy v. Shutterfly, Inc.*, No. 1:16-CV-10984, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017); *McGoveran v. Amazon Web Servs., Inc.*, No. 1:20-CV-01399, 2021 WL 4502089, at *3 (D. Del. Sept. 30, 2021) (same).  The "applicable test is whether the relevant circumstances 'occurr[ed] primarily and substantially in Illinois.'" *McGoveran*, 2021 WL 4502089, at *3 (quoting *Avery*, 216 Ill.2d at 185).  Under the Illinois Supreme Court's *Avery* decision, if a plaintiff "cannot make this showing because events were centered outside Illinois, then it must rely on some other state's law." *LG Electronics USA, Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 861 (N.D. Ill. 2011) (internal quotations omitted) (applying *Avery* to Illinois Uniform Deceptive Trade Practices Act).  Moreover, claims based upon non-extraterritorial Illinois statutes cannot stand "where a plaintiff exclusively offers evidence of nationwide, as opposed to Illinois-specific, conduct." *See id.* at 862.

As a result, Plaintiffs must allege that the BIPA violations alleged primarily and substantially occurred in Illinois. *See McGoveran*, 2021 WL 4502089 at *3 ("Therefore, BIPA violations must occur in Illinois in order for plaintiffs to obtain any relief.").  But the FAC hardly mentions anything that happened in the State of Illinois.  It alleges that LVNA's principal place of

business is New York.  (FAC ¶ 17.)  It alleges that the LVNA website at issue is its "North American" one.  (FAC ¶ 51.)  It admits that FittingBox is a "foreign compan[y]."[6]  (FAC ¶ 96.)

The only fact that relates to Illinois is that the Plaintiffs are "citizen[s] and resident[s] of the State of Illinois," and that each accessed the VTOT "while at her home in Illinois."  (FAC ¶¶ 19, 26.)  These allegations, however, are insufficient as a matter of law.  First, the only facts actually alleged about Illinois's connection to these BIPA violations – that Plaintiffs reside and acted there – are insufficient as a matter of law.  Courts have repeatedly held, including in the BIPA context, that "a plaintiff's residency is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality."  *McGoveran*, 2021 WL 4502089, at *4; *see also Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (dismissing consumer fraud claim even though each named plaintiff is a resident of Illinois because "the plaintiffs point to no allegations that plausibly suggest that the purported deceptive domain scheme occurred primarily and substantially in Illinois").

Second, the FAC's allegations acknowledge that a BIPA violation occurred, if anywhere, on FittingBox's servers.  Because photographs cannot constitute "biometric information" under BIPA, Plaintiffs' uploading of those photographs "while at [their] home[s] in Illinois" does not suggest any BIPA violation occurred in Illinois.  (FAC ¶¶ 19, 26.)  Nearly this exact issue was recently decided in *McGoveran*.  There, the plaintiffs alleged they uploaded "voice audio" from Illinois, which the defendants then converted into a "voiceprint" that allegedly constituted a regulated biometric.  2021 WL 4502089, at *4.  The Court explained that this was irrelevant – "voice audio is not the same as a voiceprint, and voice audio does not meet the definition of 'biometric identifier' or 'biometric information' under BIPA."  *Id.*  Here, photographs do not

---

[6] Although the FAC does not identify it further, FittingBox is in fact a French company.

merely fail to meet the relevant definitions:  they are expressly excluded.  740 ILCS 14/10 ("Biometric identifiers do not include … photographs…. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers").  Under Plaintiffs' theory, any "collection" or "possession" under BIPA could not have occurred until the photograph arrived at the FittingBox server identified in its FAC (¶ 62), where, according to the FAC, FittingBox used its "proprietary technology" to "collect and process the user's facial geometry" from that photograph (¶ 58).  The FAC does not allege where that server resides, except to admit that FittingBox itself is a "foreign compan[y]."  (FAC ¶ 96.)

Third, Plaintiffs cannot rely on the *lack* of receiving any BIPA notice or consent in Illinois to establish a violation in Illinois.  As explained by *McGoveran*, the premise of this argument makes little sense.  *McGoveran*, 2021 WL 4502089, at *4 ("It really makes no sense to assign a location for an act that did not occur.") (internal bracketing omitted).  But "more fundamentally," *McGoveran* shows that this argument is circular:  it "depends on the assumption that Defendants were required to provide notice, publish policies, and obtain consent in Illinois.  As stated above, however, Plaintiffs have not alleged any activity in Illinois that would impose such obligations on Defendants."  *Id.*

Finally, the FAC never alleges that any of LVNA's conduct is specific to Illinois.  It never alleges the VTOT is exclusively available to Illinois residents, or even specifically marketed toward them.  On the contrary, it identifies the relevant LVNA website as merely its "North American" one. (FAC ¶ 51.)  Fundamentally, Plaintiffs' theory is that when an international marketing effort happens to engage with an Illinois resident, that fact alone is sufficient to subject the entire campaign to regulation under Illinois's BIPA.  But Illinois law rejects that notion where, as here, the FAC "is devoid of any allegations involving conduct that occurred 'primarily and

substantially' in Illinois," *McGoveran*, 2021 WL 4502089, at *6, and therefore the FAC should be dismissed.

## **<u>CONCLUSION</u>**

For the reasons set forth herein, LVNA respectfully requests that the Court (1) grant its Rule 12(b)(1) motion with respect to Count II and/or (2) grant its Rule 12(b)(6) motion with respect to both Counts and dismiss the First Amended Complaint in its entirety.

Dated: August 22, 2022

Respectfully submitted,

/s/ Robert E. Shapiro
Robert E. Shapiro
Maile H. Solís (*pro hac vice* forthcoming)
Connor T. Gants (*pro hac vice* forthcoming)
David B. Lurie (*pro hac vice* forthcoming)
BARACK FERRAZZANO KIRSCHBAUM
& NAGELBERG LLP
200 West Madison Street, Suite 3900
Chicago, IL 60606
Ph: (312) 984-3100
Fx: (312) 984-3150
rob.shapiro@bfkn.com
maile.solis@bfkn.com
connor.gants@bfkn.com
david.lurie@bfkn.com

*Counsel for Defendant Louis Vuitton North America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, states that on August 22, 2022, a copy of the foregoing, **MEMORANDUM IN SUPPORT OF DEFENDANT LOUIS VUITTON NORTH AMERICA, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER FED. R. CIV. PROC. 12(B)(1) AND 12(B)(6),** was served upon all counsel of record electronically by ECF filing within the United States District Court, Southern District of New York.


Dated: August 22, 2022                         /s/ Robert E. Shapiro