**UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAULA THERIOT and CHERYL DOYLE, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No.: 22-CV-2944 (DLC) |
| v. | **PLAINTIFFS' OPPOSITION TO DEFENDANT LOUIS VUITTON NORTH AMERICA, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER FED. R CIV. P. 12(b)(1) AND 12(b)(6)** |
| LOUIS VUITTON NORTH AMERICA, INC., | |
| Defendant. | |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 1

   A.   The Illinois Biometric Information Privacy Act .................................................. 1

   B.   LVNA's Virtual Try-On Tool .............................................................................. 2

   C.   LVNA's Failure to Comply with BIPA Sections 15(a) and (b) ........................... 3

ARGUMENT ...................................................................................................................... 4

   A.   Legal Standard ...................................................................................................... 4

   B.   Plaintiffs Allege a Concrete and Particularized Injury Sufficient for Article III Standing Under Section 15(a) ............................................................................... 5

   C.   Plaintiffs Have Plausibly Alleged that LVNA Violated BIPA ........................... 9

       1.   LVNA Violated Section 15(a) of BIPA By Failing to Develop, Publish, or Comply with a Written Retention and Destruction Policy for the Biometric Data in Defendant's Possession ........................................................................ 9

       2.   Plaintiffs Have Plausibly Alleged that LVNA Violated Section 15(b) of BIPA When It Captured, Collected, or Otherwise Obtained Plaintiffs Biometric Identifiers and Information Without Their Consent ............................ 15

   D.   LVNA Misconstrues both BIPA's Requirements and Plaintiffs' Allegations ............... 18

   E.   LVNA's Extraterritoriality Argument is Premature and Plaintiffs' Sufficiently Allege that LVNA's BIPA Violations Occurred Primarily and Substantially in Illinois ................... 18

       1.   Defendant's Extraterritoriality Argument Must Await Discovery ................................ 19

       2.   Plaintiffs Properly Pled an Illinois Nexus. ................................................. 22

CONCLUSION ................................................................................................................. 23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................5

*Avery v. State Farm Mut. Auto Ins. Co.*,
   216 Ill. 2d 100 (2005) .........................................................................19, 20, 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................5

*Bryant v. Compass Grp. USA, Inc.*,
   958 F.3d 617 (7th Cir. 2020) .......................................................................6, 7, 8

*In re Clearview AI, Inc. Consumer Priv. Litig.*,
   No. 21-cv-0135, --- F. Supp. 3d ---, 2022 WL 444135 (N.D. Ill. Feb. 14, 2022)....................15

*Fleury v. Union Pac. R.R. Co.*,
   No. 20-CV-00390, 2022 WL 1803357 (N.D. Ill. June 2, 2022)...........................................8, 9

*Fox v. Dakkota Integrated Sys., LLC*,
   980 F. 3d 1146 (7th Cir. 2020) .................................................................6, 7, 8, 9

*Heard v. Becton, Dickinson & Co.*,
   No. 19 C 4158, --- F. Supp. 3d ---, 2021 WL 872963 (N.D. Ill. Mar. 9, 2021).......................14

*Garner v. Buzz Finco LLC*,
   No. 3:21-CV-50457, 2022 WL 1085210 (N.D. Ill. Apr. 11, 2022)........................................6

*Heard v. Becton, Dickinson, & Co.*,
   440 F. Supp. 3d 960 (N.D. Ill. 2020) .................................................................12, 13, 14, 16

*Jacobs v. Hanwha Techwin Am., Inc.*,
   No. No. 21 C 866, 2021 WL 3172967 (N.D. Ill. July 27, 2021) ......................................13, 14

*Kalb v. GardaWorld CashLink LLC*,
   No: 1:21-CV-01092, 2021 WL 1668036 (C.D. Ill. Apr. 28, 2021) ......................................8, 9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)........................................................................................4

*Mahmood v. Berbix, Inc.*,
   No. 22c-2456, 2022 WL 3684636 (N.D. Ill. Aug. 25, 2022) ..............................................19

*McGoveran v. Amazon Web Servs., Inc.*,
No. 1:20-CV-01399, 2021 WL 4502089, at *5 (D. Del. Sept. 30, 2021)...............................20

*Miller v. Southwest Airlines Co.*,
926 F.3d 898 (7th Cir. 2019) ...............................................................................................8, 9

*Monroy v. Shutterfly, Inc.*,
No. 16 C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017)...........................15, 18, 19, 21

*Morrison v. YTB Intern., Inc.*,
649 F.3d 533 (7th Cir. 2011) ...................................................................................................19

*Namuwonge v. Kronos, Inc.*,
418 F. Supp. 3d 279 (N.D Ill. 2019) ..................................................................................10, 16

*Naughton v. Amazon.com, Inc.*,
No. 20-CV-6485, 2022 WL 19324 (N.D. Ill. Jan. 3, 2022)...................................................16

*Norberg v. Shutterfly, Inc.*,
152 F. Supp. 3d 1103 (N.D. Ill. 2015) ...............................................................................18, 21

*Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*,
810 F. Appx 17 (2d Cir. 2020)..................................................................................................5

*Palmer v. Fannie Mae*,
755 Fed. Appx. 43 (2d Cir. 2018)..............................................................................................5

*Parker Madison v. Airbnb, Inc.*,
283 F. Supp. 3d 174 (S.D.N.Y. 2017).......................................................................................6

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ....................................................................................8, 19, 23

*Patterson v. Respondus, Inc.*,
No. 20-C-7692, 2022 WL 860946 (N.D. Ill. Mar. 23, 2022) ...................................................6

*People v. Chapman*,
2012 IL 111896...........................................................................................................................10

*People v. Ward*,
215 Ill. 2d 317 (2005) ...............................................................................................................10

*Powell v. Shiseido Americas Corp.*,
No. 21-CV-02295-CSB-EIL, ECF No. 18 (C.D. Ill., Aug. 22, 2022)5 .......................... *passim*

*Rivera v. Google, Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) .............................................................................20, 23

*Rosenbach v. Six Flags Ent. Corp.*,
  2019 IL 123186................................................................................................10

*Santana v. Take-Two Interactive Software, Inc.*,
  717 F. App'x 12 (2d Cir. 2017) .........................................................................6

*Sosa v. Onfido, Inc.*,
  No. 20-CV-4247, 2022 WL 1211506 (N.D. Ill. Apr. 25, 2022) ................................15, 18, 21

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)........................................................................................4, 5

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
  480 F. Supp. 3d 888 (S.D. Ill. Aug. 19, 2020) .....................................................6, 14

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
  No. 19-L-311 (St. Clair Cnty., Ill., July 23, 2022)...................................................13

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
  No. 3:20-cv-00046, 2022 WL 3139507 (S.D. Ill. Aug. 5, 2022)...................................16

*Vance v. Int'l Bus. Mach. Corp.*,
  No. 20 C 577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020)......................................19

*Vance v. Microsoft Corp.*,
  525 F. Supp. 3d 1287 (W.D. Wash. 2021)............................................................15

*Vulcan Golf, LLC v. Google, Inc.*,
  552 F. Supp. 2d 752 (N.D. Ill. 2008) ..................................................................22

*Watson v. Legacy Healthcare Fin. Servs.*,
  2021 WL 5917935 (Ill. App. Ct. Dec. 15, 2021) ....................................................16

*Woods v. FleetPride, Inc.*,
  No. 1:21-CV-01093, 2022 WL 900163 (N.D. Ill. Mar. 27, 2022) .............................6

**Rules and Statutes**

740 ILCS 14/5 ..........................................................................................................1

740 ILCS 14/10 ......................................................................................................18

740 ILCS 14/15 ..............................................................................................1, 2, 6

Fed. R. Civ. P. 12 ........................................................................................4, 5, 12, 19

Fed. R. Civ. P. 15 ......................................................................................................5

## INTRODUCTION

LVNA attempts to avoid liability for its violations of the Illinois Biometric Information Privacy Act ("BIPA") by improperly limiting the scope of the statute and misconstruing the allegations in the First Amended Class Action Complaint. Although LVNA itself embedded the Virtual Try-On Tool on its product pages to show potential customers how LVNA's sunglasses would look on their faces in an effort to sell more eyewear, it foists the blame to its vendor, while ignoring the harm to Plaintiffs and the putative Class. Because Plaintiffs have demonstrated their standing to bring BIPA claims against LVNA, and pleaded facts sufficient to support their claims that LVNA violated Sections 15(a) and 15(b) of BIPA, its motion should be denied.[1]

## FACTUAL BACKGROUND

### A.     The Illinois Biometric Information Privacy Act

BIPA was enacted in 2008 to protect the privacy rights of consumers in the State of Illinois. FAC[2] ¶ 5. In enacting BIPA, the General Assembly found that the sensitivity of biometric information and identifiers warrants heightened protection when companies like LVNA collect it from consumers. *Id.* ¶ 6. Biometric identifiers are "biologically unique to the individual" and a consumer whose biometrics are compromised "has no recourse" and "is at heightened risk for identity theft." 740 ILCS 14/5(c). Therefore, the General Assembly found "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* at 14/5(g).

For these reasons, Section 15(a) of BIPA requires that private entities in possession of biometric identifiers or biometric information must:

---

[1] As used throughout this brief, "LVNA" refers to Defendant Louis Vuitton North America, Inc.
[2] "FAC" or "Complaint" refers to Plaintiffs' First Amended Complaint.

> [D]evelop a written policy, made available to the public, establishing a retention
> schedule and guidelines for permanently destroying biometric identifiers and
> biometric information when the initial purpose for collecting or obtaining such
> identifiers or information has been satisfied or within 3 years of the individual's
> last interaction with the private entity, whichever occurs first. Absent a valid
> warrant or subpoena issued by a court of competent jurisdiction, a private entity
> in possession of biometric identifiers or biometric information must comply with
> its established retention schedule and destruction guidelines.

740 ILCS 14/15(a).  Further, Section 15(b) of BIPA requires informed consent before a private

entity collects, captures, or otherwise obtains a person's biometric identifiers or information:

> No private entity may collect, capture, purchase, receive through trade, or
> otherwise obtain a person's or a customer's biometric identifier or biometric
> information, unless it first:
>
> > (1) informs the subject or the subject's legally authorized representative in
> > writing that a biometric identifier or biometric information is being
> > collected or stored;
> >
> > (2) informs the subject or the subject's legally authorized representative in
> > writing of the specific purpose and length of term for which a biometric
> > identifier or biometric information is being collected, stored, and used; and
> >
> > (3) receives a written release executed by the subject of the biometric
> > identifier or biometric information or the subject's legally authorized
> > representative.

*Id.* at 14/15(b).  LVNA is a private entity required to follow BIPA as it captures, collects, and

possesses consumer's protected biometric data through its Virtual Try-On Tool on its website.

FAC ¶¶ 9-15.  LVNA has failed to comply with Sections 15(a) and (b) of BIPA by taking

Plaintiffs' and other Class members' sensitive biometric identifiers without their consent, placing

this unique and sensitive data at increased risk of compromise, and depriving them of their right

to be informed of the purpose for collecting their biometric data, and of LVNA's policy for

biometric retention and destruction.  *Id.*

> **B.    LVNA's Virtual Try-On Tool**

LVNA is a large, luxury brand that sells, among many other high-end goods, designer

eyewear through its website.  *Id.* ¶¶ 10, 33-35, 50.  LVNA invites consumers, via its website, to

virtually "try on" its designer eyewear using LVNA's Virtual "Try-On Tool."  *Id*. ¶¶ 10, 51-52. Plaintiff Cheryl Doyle used LVNA's Virtual Try-On Tool on the LVNA website once, spending approximately one hour on LVNA's website reviewing sunglasses, and Plaintiff Paula Theriot used LVNA's Virtual Try-On Tool four times, spending approximately four hours on LVNA's website.  *Id*. ¶¶ 19, 26.  On LVNA's eyewear product pages a consumer can click a "Try On" button, which launches the Virtual Try-On Tool and automatically activates their computer or phone camera to display a live feed of their face, where the consumer will see the LVNA eyewear they wish to "try on" placed on their face in the live video, moving and changing angles in real time as the consumer moves their face.  *Id*. ¶¶ 54-56.  The Virtual Try-On Tool is powered by an application embedded in LVNA's product webpages, which was created by FittingBox, and incorporated by Defendant into LVNA's website.  *Id*. ¶ 58.  The Virtual Try-On Tool works by capturing the user's facial geometry, whether via live video or from an uploaded picture, which is then used to identify the shape and features of the user's face in order to correctly place the eyewear onto the user's facial image.  *Id.* ¶¶ 54, 58-61.

### C.    LVNA's Failure to Comply with BIPA Sections 15(a) and (b)

Plaintiffs allege LVNA failed to comply with Section 15(b) of BIPA because LVNA (1) does not inform consumers in writing that their biometrics are being collected and stored; (2) does not inform consumers of the specific purpose and length of time (if any) for which LVNA collects, stores, and uses their biometrics; and (3) does not obtain a written release from them before collecting their biometrics.  FAC ¶¶ 11-14, 81-88.  Further, Plaintiffs allege LVNA violated Section 15(a) of BIPA because LVNA did not make public a written policy establishing a retention and destruction schedule for the biometrics collected, captured, or otherwise obtained by LVNA.  *Id.* ¶¶ 13, 89-97.

Despite collecting, capturing, and/or obtaining Plaintiffs' facial biometrics in Illinois, LVNA did not obtain Plaintiffs' informed and written consent to collect, transmit, store, and/or process Plaintiffs' biometric information or identifiers; did not inform Plaintiffs of the purpose for collecting their biometrics or about the length of time the biometric information or identifiers would be stored and when they would be destroyed; and did not obtain a written release from Plaintiffs authorizing LVNA to collect, store, and/or use each Plaintiffs' facial geometry. *Id*. ¶¶ 23-24, 30-31. LVNA also failed to develop, make available to Plaintiffs and the public, or comply with any biometric retention and destruction policies. *Id.* ¶¶ 93-95. Plaintiffs seek to represent a class of Illinois consumers whose biometric identifiers were captured by LVNA through the use of LVNA's Virtual Try-On Tool. *Id.* ¶ 71.

## **ARGUMENT**

### A.    **Legal Standard**

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). To invoke the adjudicative power of a federal court, plaintiffs must sufficiently show through their pleadings that they have standing to sue, a requirement "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To show standing, plaintiffs must plead that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*.

The test for injury in fact asks whether a plaintiff has "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.'" *Id*. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Concrete injuries can be either tangible or intangible. *Spokeo*, 578 U.S. at 340-41. To determine whether an intangible harm

satisfies the injury-in-fact requirement in a statutory case, both the legislature's judgment and historical practice "play important roles." *Id.*

To defeat a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint need only include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In determining whether that standard has been met, the Court must accept as true all of Plaintiffs' allegations of material fact and construe them in the light most favorable to the Plaintiff.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009).  A claim has facial plausibility when the complaint contains factual content that allows the Court, based on its experience and common sense, to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Twombly,* 550 U.S. at 556.  The plausibility standard is met if there is more than a sheer possibility that a defendant has acted unlawfully.  *Id*.;  *Palmer v. Fannie Mae*, 755 Fed. Appx. 43, 45 (2d Cir. 2018).  To the extent the Court finds defects in the pleadings sufficient to warrant dismissal, that dismissal should be without prejudice to permit Plaintiffs to repair the defect.  Fed. R. Civ. P. 15(a); *e.g., Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*, 810 F. Appx 17, 18 (2d Cir. 2020) (remanding case to district court to consider whether leave to amend appropriate); *Palmer*, 755 Fed. Appx. at 45 (finding error in not allowing plaintiff to amend complaint after trial court dismissed claims with prejudice).

### B.    Plaintiffs Allege a Concrete and Particularized Injury Sufficient for Article III Standing Under Section 15(a)

LVNA argues Plaintiffs fail to allege an injury-in-fact sufficient to confer Article III standing under Plaintiffs' Section 15(a) claim.[3]  Defendant's argument should be rejected as

---

[3] Defendant's sole argument for lack of standing is lack of a concrete injury unique to either Plaintiff, rather than one suffered by the public generally.  Defendants do not argue that Plaintiffs have failed to plead an injury, or failed to plead that injury is fairly traceable to Defendant's conduct and is redressable by a favorable judicial decision.

Plaintiffs credibly allege violations of Section 15(a), including concrete and particularized injuries, sufficient to establish Article III standing.[4]

Section 15(a) of BIPA requires private entities, like LVNA, "in possession of biometric identifiers or biometric information" to develop and follow a written policy establishing a retention and destruction schedule for that biometric data and make that written policy available to the public.  740 ILCS 14/15(a).  The courts that have addressed this issue have consistently held that the duty to comply with the data-retention schedule under Section 15(a) protects a person's biometric privacy just as surely as Section 15(b)'s informed consent requirements do.  *See, e.g., Fox v. Dakkota Integrated Sys., LLC*, 980 F. 3d 1146, 1154-55 (7th Cir. 2020) ("An unlawful retention of biometric data inflicts a privacy injury in the same sense that an unlawful collection does.").  Here, Plaintiffs have alleged facts sufficient to establish concrete and particularized injuries resulting from LVNA's violation of Section 15(a) for Article III standing.

LVNA relies on *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617 (7th Cir. 2020) to argue that the duty to disclose under Section 15(a) is owed to the public generally and therefore not particularized in a manner that gives rise to Article III standing.  This reliance on *Bryant* is misguided because LVNA failed to consider the narrowness of the court's Section 15(a) holding in *Bryant* and ignores the subsequent instructive case law from that Circuit.[5]

---

[4] Defendant's reliance on *Parker Madison v. Airbnb, Inc.*, 283 F. Supp. 3d 174, 181 (S.D.N.Y. 2017) is easily distinguishable because there, plaintiff real estate brokers "fail[ed] to point to any specific fact supporting its injury" or "give any details whatsoever as to any actual injury [] connected to [defendant] Airbnb's activities," and thus the court found their conclusory statements "insufficient to establish injury-in-fact" for Article III standing.
[5] LVNA relies on federal cases dismissing section 15(a) claims that are easily distinguished.  For example, *Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12, 15-16 (2d Cir. 2017) is a summary order with no precedential value.  There, it was undisputed that Take-Two informed the plaintiffs that the MyPlayer feature required a "face scan" prior to the scan occurring and further the plaintiffs did not allege that Take-Two lacked a retention schedule and guidelines for destroying their biometric data.  LVNA's other cases, *Garner v. Buzz Finco LLC*, No. 3:21-CV-50457, 2022 WL 1085210, at *3–4 (N.D. Ill. Apr. 11, 2022), *Woods v. FleetPride, Inc.*, No. 1:21-CV-01093, 2022 WL 900163, at *5 (N.D. Ill. Mar. 27, 2022), *Patterson v. Respondus, Inc.*, No. 20-C-7692, 2022 WL 860946, at *7, 17 (N.D. Ill. Mar. 23, 2022) and *Stauffer v. Innovative Heights Fairview Heights, LLC*, 480 F. Supp. 3d 888, 899 (S.D. Ill. Aug. 19, 2020) are unpersuasive because unlike Plaintiffs here, plaintiffs in those cases failed to allege any facts beyond a violation of section 15(a)'s publication requirement and thus the courts held they did not

In *Bryant*, the plaintiff sued the owner and operator of the "Smart Market" vending machines located in her workplace cafeteria, which required the user to set up an account by scanning their fingerprints to make purchases. 958 F.3d at 619.  The Seventh Circuit reasoned that that "[defendant]'s failure to comply with the informed-consent requirements of section 15(b) deprived [plaintiff] of her right to make informed choices about the use of and control over her inherently sensitive biometric data." *Id*. at 626.  With regard to her section 15(a) claim, however, the plaintiff alleged only a violation of the duty to disclose the written policy "establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information"—e.g., a "duty owed to the public generally," *not* the duty to develop and comply with the established retention schedule and destruction guidelines. *Id.*; *see also*, *Fox*, 980 F.3d at 1154 ("[f]ollowing a petition for rehearing in *Bryant*, we amended the opinion to clarify the limits of the section 15(a) holding. [Plaintiff]'s claim was extremely narrow, alleging *only* a violation of the section 15(a) duty to *publicly disclose* data retention and destruction protocols." (emphasis in original)).  The plaintiff also failed to allege any "particularized harm that resulted from [defendant's] violation of section 15(a)" and thus the Seventh Circuit concluded she lacked Article III standing for her section 15(a) claim. *Bryant*, 958 F.3d at 626.  The Court's "analysis [was] limited to the theory she invoked" and did not address the remainder of Section 15(a). *Id.*; *Fox*, 980 F.3d at 1154.

The allegations here are much more akin to those in *Fox*, a subsequent decision where the Seventh Circuit found the plaintiff had established Article III standing based on facts that the court distinguished from those in *Bryant*. 980 F. 3d at 1154-55.  In *Fox*, the plaintiff was required to clock in and out of work by scanning her hands on a biometric timekeeping device with the

---

suffer a concrete and particularized injury-in-fact.

data then stored in a third-party database.  *Id.*  The plaintiff alleged that the defendant violated

Section 15(a) based on its "failure to develop, publicly disclose, and comply with a retention

schedule and destruction guidelines for the biometric data it collects from its employees."  *Id*. at

1150.  The Seventh Circuit found,

> [u]nlike in *Bryant*, [plaintiff]'s section 15(a) claim does not allege a mere
> procedural failure to publicly disclose a data-retention policy.  Rather, [plaintiff]
> alleges a concrete and particularized invasion of her privacy interest in her
> biometric data stemming from [defendant's] violation of the full panoply of its
> section 15(a) duties—the duties to develop, publicly disclose, and comply with
> data retention and destruction policies.

*Id.*  Because "[t]he BIPA requirement to implement data retention and destruction protocols

protects a person's biometric privacy just as concretely as the statute's informed-consent regime,"

the court found "[i]t follows that an unlawful retention of a person's biometric data is as concrete

and particularized an injury as an unlawful collection of a person's biometric data."  *Id*. at 1155.[6]

As in *Fox*, Count II of Plaintiffs' Complaint explains the particularized harm LVNA

caused each Plaintiff, by failing to develop, possess, publish, and by implication, failing to comply

with the required written policy, and by failing to inform Plaintiffs of "the specific purpose and

length of term for which it is collecting, facilitating the storage of, or using [ ] such data," as

required by Section 15(a) of BIPA.  FAC ¶¶ 67, 94.  Specifically, "[Plaintiffs'] . . . injur[ies]

include[] the unknowing loss of control of their most unique biometric identifiers, and violations

---

[6] Other courts have likewise found plaintiffs to have met the requirements for Article III standing under section 15(a) in similar cases.  *E.g., Patel v. Facebook, Inc.*, 932 F.3d 1264, 1274 (9th Cir. 2019) (holding section 15(a) was intended "to protect an individual's 'concrete interests' in privacy, not merely procedural rights"); *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019) (finding union airline workers had standing to bring violations of section 15(a) and (b) of BIPA where the employees alleged a heightened risk of improper dissemination of biometric data where the employers were not "following the statutory data-retention limit and . . . used outside parties to administer their timekeeping systems."); *Kalb v. GardaWorld CashLink LLC*, No: 1:21-CV-01092, 2021 WL 1668036, at*3 (C.D. Ill. Apr. 28, 2021) (holding plaintiff's allegations that defendant "does not have written, publicly available policies identifying their retention schedules, or guidelines for permanently destroying any of these biometric identifiers or biometric information" as "reasonably suggesting" that defendant "unlawfully retained [biometric] data" in direct violation of Section 15(a)); *Fleury v. Union Pac. R.R. Co.*, No. 20-CV-00390, 2022 WL 1803357, at *3 (N.D. Ill. June 2, 2022) (finding defendant's failure "to develop retention/destruction policies while still retaining [plaintiff's] and others' biometric data" as "sufficient to establish Article III standing").

of their privacy due to LVNA's collection, capture, and storage of their biometric information and biometric identifiers, and its sharing of that data with foreign companies." FAC ¶¶ 94, 96. Plaintiffs further allege LVNA's failure to implement data retention and destruction policies "placed Plaintiffs' and the other Class members' sensitive biometric identifiers at risk of compromise or illicit use by LVNA and others." *Id*. ¶ 95.

Plaintiffs have therefore alleged a concrete and particularized invasion of privacy that is sufficient to confer Article III standing on Plaintiffs to pursue their claims against Defendant for violating Section 15(a) of BIPA. *Fox*, 980 F. 3d at 1155-56; *see also Miller*, 926 F.3d at 902 (finding union airline workers had standing to bring violations of section 15(a) and (b) of BIPA where the employees alleged a heightened risk of improper dissemination of biometric data where the employers were not "following the statutory data-retention limit and . . . used outside parties to administer their timekeeping systems."); *Fleury*, 2022 WL 1803357, at *3 (finding defendant's failure "to develop retention/destruction policies while still retaining [plaintiff's] and others' biometric data" as "sufficient to establish Article III standing"); *Kalb*, 2021 WL 1668036, at *3 (holding plaintiff's allegations that defendant "does not have written, publicly available policies identifying their retention schedules, or guidelines for permanently destroying any of these biometric identifiers or biometric information" as "reasonably suggesting" that defendant "unlawfully retained [biometric] data" in direct violation of Section 15(a)).

### C.   Plaintiffs Have Plausibly Alleged that LVNA Violated BIPA

#### 1.   LVNA Violated Section 15(a) of BIPA By Failing to Develop, Publish, or Comply with a Written Retention and Destruction Policy for the Biometric Data in Defendant's Possession

LVNA's sole challenge to Plaintiffs' Section 15(a) claim is whether the Complaint plausibly alleges that LVNA was in possession of Plaintiffs' and putative Class members' biometric identifiers or biometric information, and therefore subject to Section 15(a) in the first

place.  Mot. at 11-13.  Because BIPA does not define possession, Illinois courts look to the "popularly understood meaning" of the term.  *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 29; *see also People v. Chapman*, 2012 IL 111896, ¶ 24 ("When a statute contains a term that is not specifically defined, it is entirely appropriate to look to the dictionary to ascertain the plain and ordinary meaning of the term.").  As courts have found, "possession 'occurs when a person has or takes control of the subject property or holds the property at his or her disposal.'" *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 283 (N.D Ill. 2019) (*quoting People v. Ward*, 215 Ill. 2d 317, 325 (2005)).  Plaintiffs have plausibly alleged that LVNA, through its Virtual Try-On Tool, was in possession of Plaintiffs' and putative Class members' biometric identifiers and biometric information, including their face geometries.

LVNA insists the Complaint makes only "bare, box-checking declarations that LVNA is 'in possession of biometric identifiers,'" while all of the details allegedly point to non-party FittingBox.  Mot. at 11-12.  To make this argument, LVNA cherry-picks paragraphs of the Complaint, and in turn misconstrues or ignores the remainder of the Complaint and seeks to resolve disputed factual issues in its favor.

In contrast to LVNA's arguments otherwise, paragraphs 44 and 93 of the Complaint summarize the duties entities like LVNA, which collect and possess biometric data, have under BIPA.  A plethora of additional allegations in the Complaint, which LVNA conveniently ignores, illustrate that LVNA collects and possesses, and how LVNA collects and possesses, Plaintiffs' and putative Class members' biometric identifiers and biometric information through LVNA's Virtual Try-On Tool.  *See, e.g.*:

> 11. But, unbeknownst to its website users—including Plaintiffs and the other Class members—LVNA collects detailed and sensitive biometric identifiers and information, including complete facial scans, of its users through the Virtual Try-

On tool, and it does this without first obtaining their consent, or informing them that this data is being collected.

50. LVNA operates its website (https://us.louisvuitton.com/eng-us/homepage) and markets and sells its products (including sunglasses) through that website.

51. LVNA sells sunglasses and other types of glasses ("eyewear") through its North American website, which allows users and potential customers to use a tool called "Virtual Try- On" which allows a website user to see how LVNA's various eyewear would look on their face.

52. When a user of LVNA's website views eyewear for which the Virtual Try-On tool is available, LVNA invites that potential customer to access its website's Virtual Try-On feature by presenting a "Try On," button that appears in the top-left or top-right corner of the product image for the product being viewed (as illustrated by the screenshots that follow).

54. When website users click the "Try On" button on LVNA's website, the website activates its Virtual Try-On overlay, which uses the user's computer or phone camera to display, on LVNA's website, a real-time image of themselves wearing one of the various sunglasses products LVNA sells.

55. LVNA's Virtual Try-On tool automatically activates the users' webcam, so that the user's real-time image appears as soon as they click the "Try On" button.

56. Once the webcam is on, the user will see their LVNA eyewear selections placed on their face, with the image moving and changing angles, in real time, to comport with the user's facial movements and adjustments.

57. The Virtual Try-On feature is able to accurately detect, in an instant, where eyewear should be placed on a website visitor's face, and moves the eyewear with the user's movements to ensure that it appears as if the user is actually wearing the eyewear.

58. The Virtual Try-On Tool on LVNA's website is powered by an application embedded in LVNA's product webpages, which was created by FittingBox. LVNA incorporates FittingBox's proprietary technology into its website in order to collect and process the user's facial geometry, which allows, in real time, the proper placement of the eyeglasses on the user's face.

60. In addition to or instead of using the real-time Virtual Try-On feature on LVNA's website—which requires a smartphone or computer camera—a website user may, instead, upload a photo of his or her face, after which LVNA will place the eyewear in the correct place on the user's photograph. Uploading a photo still requires the use of facial scans to determine the correct placement of the glasses on a user's face.

61. The Virtual Try-On Tool on LVNA's website can also capture the user's facial geometry from photos, regardless of whether the photo is taken by web or phone camera while using the Virtual Try-On tool, or on a photo uploaded to the tool. These facial-geometry scans are used to identify the shape and features of the user's face to accurately, and virtually, overlay the eyewear onto the user's facial image.

62. LVNA directs users to use its Virtual Try-On tool, which collects their biometric information and facial scans, and sends it to the address listed below:

66. LVNA's website extracts the user's biometric data, which is combined with data necessary to show LVNA's eyewear on the user's face, before that data is repackaged and sent back to the user's device (shown below).

FAC ¶¶ 11, 50-52, 54-58, 60-62, 66.  As the foregoing allegations make clear, while FittingBox created the technology that allows the Virtual Try-On Tool to work, it is LVNA that embedded the Virtual Try-On Tool on its website, LVNA that offers the Virtual Try-On Tool on its website, LVNA that controls its website, and LVNA's website that extracts Virtual Try-On Tool users' biometric data, including facial scans (thereby collecting and possessing it) and combines them with the additional data needed to show LVNA's eyewear on the user's face, in real time, as the user moves their face.  That the biometric data LVNA extracts is also sent to its agent's server does not cancel out LVNA's possession of it.  BIPA does not limit possession to a single entity. *Heard v. Becton, Dickinson, & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020) ("The ordinary meaning of possession does not contemplate exclusive control, . . . and nothing in the BIPA indicates that the ordinary definition of possession does not apply.").  Furthermore, nothing in Plaintiffs' allegations suggest exclusive possession and LVNA's attempt to resolve a factual issue in its favor are improper at the pleadings stage of the litigation.

The U.S. District Court for the Central District of Illinois recently denied a Rule 12(b)(6) motion brought on almost identical grounds in another case involving a Virtual Try-On Tool similar to LVNA's.  *See Powell v. Shiseido Americas Corp.*, No. 21-CV-02295-CSB-EIL, ECF

12

No. 18, at 13 (C.D. Ill., Aug. 22, 2022) (attached as Exhibit A).  The defendant in *Powell* had argued "that [p]laintiff has 'pleaded himself out of court' because his allegations 'affirmatively demonstrate' that a third-party developer, rather than [d]efendant, 'may have been solely responsible' for the alleged collection and possession of biometric data." *Id.* at 9.  The *Powell* court disagreed, noting that the "[p]laintiff alleged that [Virtual Try-On Tool] is 'powered by' an application developed and marketed by a third party," and explained: "Is it possible that the application was implemented on [d]efendant's website in such a way that the third party, and only that third party, captured, collected, and possessed the facial geometry in question?  Perhaps.  But that is far from a necessary conclusion to be drawn from [p]laintiff's allegations. Plaintiff has not pled himself out of court." *Id.* at 9-10.  "Plaintiff's biometric identifiers were captured through technology placed on [d]efendant's websites," and "[a]t this stage of the proceedings, it can be plausibly inferred that [d]efendant controls or holds at its disposal data generated at its own websites." *Id.* at 13-14.

To support its argument that Plaintiffs' claims under Section 15(a) should be dismissed, LVNA relies heavily on three inapposite opinions from factually distinguishable cases: *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960 (N.D. Ill. 2020), *Jacobs v. Hanwha Techwin Am., Inc.*, No. No. 21 C 866, 2021 WL 3172967 (N.D. Ill. July 27, 2021), and *Stauffer v. Innovative Heights Fairview Heights, LLC* ("*Stauffer*"), No. 19-L-311 (St. Clair Cnty., Ill., July 23, 2022). LVNA relies principally on *Heard*, in which the plaintiff alleged that the developer of the technology used to scan his fingerprint was liable for a BIPA violation.  440 F. Supp. 3d at 963. Pointedly, the plaintiff in that case did *not* sue his employer (the *user* of the biometric capturing technology) which required that all employees scan their fingerprint to gain access to medication storage, and instead sued the *developer* of the biometric collecting technology.  *Id.*  Further, in

*Heard*, the plaintiff did not even allege *how* the defendant came to possess his biometric information.  The court in *Jacobs* came to the same conclusion on a similar set of facts.  *See* 2021 WL 3172967 at *3 (granting defendant's motion to dismiss because "a complete reading of the complaint makes clear that defendant is merely a third-party technology provider (that is, merely provided the cameras)" which collected the biometric information in question).

Here, Plaintiffs have done the *opposite* of the plaintiffs in *Heard* and *Jacobs*: rather than suing the technology maker, Plaintiffs have sued the technology *user* and director.  The court in *Powell* denied the defendant's motion to dismiss for this very reason, and identified this as a core weakness of the defendant's motion to dismiss in that suit:

> Defendant is not a developer or manufacturer of biometric-data-collecting technology who sells that technology to clients. Defendant *is* the client" and the one who "procured the [] application, placed on its [] website under the name Virtual Try On, and put the buttons or links to that application on page for a number of its [] products, thus directing website users to the application.

*Powell*, at 12 (emphasis in original).  So is LVNA here.  FAC ¶¶ 11, 50-52, 54-58, 60-62, 66.

*Stauffer* is similarly inapposite.  In *Stauffer*, the plaintiff was an employee of a franchisee, and alleged BIPA violations against both the franchisee and the franchisor, asserting that contractual agreements between the two defendants provided the franchisor the power to require that the franchisee to turn over "all information or data" in the franchisee's system, which included her biometric data.  *Stauffer*, at 2.  The plaintiff did not allege, however, that the franchisor ever actually possessed her biometric data, and the court held that simply having the power to control possession was not the same as actual possession, and dismissed plaintiff's suit against the franchisor.  *Id.* at 2-3.  Other courts have also come to a different conclusion.  *See, e.g.*, *Heard v. Becton, Dickinson & Co.* ("*Heard II*"), No. 19 C 4158, --- F. Supp. 3d ---, 2021

WL 872963, at *4 (N.D. Ill. Mar. 9, 2021), where the court held that a defendant who can "access

the biometric data collected" is "in possession" of that data.

Plaintiffs here have alleged sufficient facts to state a plausible claim that LVNA was

subject to and violated Section 15(a) of BIPA.  The Court should deny LVNA's motion to dismiss

Count II of the Complaint.

> **2.    Plaintiffs Have Plausibly Alleged that LVNA Violated Section 15(b) of BIPA When It Captured, Collected, or Otherwise Obtained Plaintiffs Biometric Identifiers and Information Without Their Consent**

LVNA similarly seeks to avoid liability for its violations of Section 15(b) of BIPA by

arguing that Plaintiffs have not alleged that LVNA took any "active step" to collect, capture,

purchase, receive through trade, or otherwise obtain Plaintiffs' biometric information and

identifiers, but only that FittingBox did.  Mot. at 14-15.[7]  LVNA would have the Court believe

any role it has is a passive one.  "But simply calling its own activities 'passive' does not make

them so.  In fact, it ignores the multiple affirmative steps necessary for [LVNA] to bring [the

---

[7] Throughout its Motion, Defendant also misconstrues the Complaint as alleging that it is a photograph that is transmitted to FittingBox's server (*see, e.g.*, Mot. at 2, 3, 4, 5, 12, 14, 17-18), in order to argue that photographs are not biometric identifiers or biometric information under BIPA, so possessing or collecting them cannot be a BIPA violation.  Plaintiffs allege that LVNA, through its Virtual Try-On Tool, extracts website users' biometric data, including scans of their facial geometry, from either a live view of the user's face through their webcam or phone camera, or from photographs the users upload, and it is the facial geometry scans which are then sent to FittingBox for the virtual sunglasses to be added before the facial geometry scan and additional data adding the sunglasses are returned and displayed to the user.  FAC ¶¶ 10-11, 20, 26-27, 50-66.  The Northern District of Illinois recently analyzed in depth the question of whether a facial scan of a photograph was a biometric identifier under BIPA, and held that it was.  *Sosa v. Onfido, Inc.*, No. 20-CV-4247, 2022 WL 1211506, at *7 (N.D. Ill. Apr. 25, 2022).  The court noted that, while Section 10 of BIPA expressly excludes photographs from the definition of "biometric identifier" and information derived from photographs from the definition of "biometric information," nothing in Section 10 excludes information derived from photographs from the definition of "biometric identifiers."  *Id.* at *7 (citing *Vance v. Microsoft Corp.*, 525 F. Supp. 3d 1287, 1296 (W.D. Wash. 2021) and *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017), where courts rejected defendants' arguments that data obtained from a photograph cannot constitute a "biometric identifier.").  Ultimately, the *Sosa* court chose to "join the Illinois courts that have uniformly rejected the argument that BIPA exempts biometric data extracted from photographs."  *Sosa*, 2022 WL 1211506, at *9 (quoting *In re Clearview AI, Inc. Consumer Priv. Litig.*, No. 21-cv-0135, --- F. Supp. 3d ---, 2022 WL 444135, at *5 (N.D. Ill. Feb. 14, 2022); and citing to *Vance*, 525 F. Supp. 3d at 1295 ("This is not the first—or second, or third, or even fourth—time that defendants have challenged BIPA's applicability to facial scans derived from photographs.  Every court has rejected [defendant's argument.")) (cleaned up).

Virtual Try-On Tool] to its customers."  *Powell*, at 12.  The same allegations in the Complaint that indicate how LVNA possessed Plaintiffs' and Class members' biometric data, go beyond mere possession and also explain the active steps LVNA took to collect, capture, or otherwise obtain their biometric data.  FAC ¶¶ 11, 50-52, 54-62, 66.[8]

Plaintiffs' claims against LVNA are unlike those in *Heard*, 440 F. Supp. 3d at 965, *Namuwonge*, 418 F. Supp. 3d at 283, and *Stauffer v. Innovative Heights Fairview Heights, LLC* ("*Stauffer II*"), No. 3:20-cv-00046, 2022 WL 3139507, at *4 (S.D. Ill. Aug. 5, 2022), where the plaintiffs either sued the entity that manufactured the relevant technology rather than the entity that actually used it to collect biometric data (*Heard* and *Namuwonge*), or failed to plead that the defendant "ever did anything to extract or obtain the biometric information" at issue.  *Stauffer II*, 2022 WL 3139507, at *6.  Instead, the allegations in the Complaint are comparable to those in *Naughton v. Amazon.com, Inc.*, No. 20-CV-6485, 2022 WL 19324 (N.D. Ill. Jan. 3, 2022).  In *Naughton*, the court held that plaintiff had sufficiently alleged that "[defendant] took an 'active step' in collecting plaintiff's biometric data," where plaintiff alleged that defendant "collects the data for its own use," has "imposed this [collection of biometric data] requirement" on plaintiff and other workers "as a condition of their employment."  2022 WL 19324, at *3.  Plaintiffs here have alleged that: (1) LVNA operates a website through which it sells sunglasses (FAC ¶ 50); (2) LVNA presents the website's users with the opportunity to view LVNA's sunglasses as they would appear on their faces through the Virtual Try-On Tool, which LVNA has embedded on various pages of its website (and not on others) (*id.* ¶ 52); LVNA collects and processes website

---

[8] BIPA does not define the term "collect."  Merriam-Webster defines "collect" as "to bring together into one body or place" or "to gather or exact from a number of persons or sources."  *See Collect*, MERRIAM WEBSTER, https://www.merriamwebster.com/dictionary/collect (last visited Sept. 2, 2022); *see also Watson v. Legacy Healthcare Fin. Servs.*, 2021 WL 5917935, *8 (Ill. App. Ct. Dec. 15, 2021) (applying the "gather" definition in the BIPA context).

users' facial geometry with the Virtual Try-On Tool, which then allows the proper placement of LVNA's sunglasses on the user's face in real time (*id.* ¶¶ 11, 54-62); LVNA incorporated this software into its website to collect and process users' facial geometry and requires them to provide their biometric data in order to use the Virtual Try-On Tool (*id.* ¶¶ 55-60); and LVNA's website (which LVNA runs) extracts the user's biometric data, and combines it with the additional data needed to show LVNA's eyewear on the user's face, even as the user moves their face around (*id.* ¶ 66).  LVNA's only response is to attempt to shift the blame to a third party instead.  Mot. at 14-15.  Repeatedly saying nothing to see here, look over there instead, does not make it true.

*Powell* is again instructive.  In *Powell*, the court held that the plaintiff sufficiently alleged the necessary "active step" where plaintiff alleged "[d]efendant procured the [] application, placed it on its [] website under the name Virtual Try On, and put buttons or links to that application on pages for a number of its makeup products, thus directing website users to the application," further alleged "that the technology on [d]efendant's websites creates a 100-point geometric map of the user's face," and the defendant "does not seem to make an argument that VTO or the [] application does not capture or collect biometric identifiers.  Rather, its argument seems limited to the contention that [d]efendant itself cannot be said to have actively participated in the collection or capture." *Id*. at 12.  Plaintiffs' allegations and LVNA's response here are essentially identical to those in *Powell*.

Plaintiffs have alleged facts sufficient to show that their claims against LVNA for violations of Section 15(b) of BIPA are plausible, because they allege that LVNA uses a tool which captures, collects, stores, and processes biometric identifiers and information on its website to assist in marketing and selling products to its customers.  As a result, this Court should deny LVNA's motion to dismiss Count I of the Complaint.

**D.      LVNA Misconstrues both BIPA's Requirements and Plaintiffs' Allegations**

LVNA's improper attempt to portray the operation of its Virtual Try-On Tool as using only photographs is intentional: it forms the basis for LVNA's attempt to avoid liability (and improperly try to reduce the size of the proposed class in a 12(b)(6) motion) to users of the photo upload option that LVNA has taken biometric identifiers from. *See* Mot. at 5 ("But, 'photographs' are expressly excluded from the definition of 'biometric identifiers.' 740 ILCS 14/10.").

Plaintiffs have not alleged that taking or uploading a photograph (for the subset of the putative Class that only took, or uploaded, a photograph) creates liability.  LVNA conveniently forgoes mention of Plaintiffs' allegation that "[u]ploading a photo still requires the use of facial scans to determine the correct placement of the glasses on a user's face" and that the "Virtual Try-On Tool on LVNA's website can also *capture the user's facial geometry* from photos, regardless of whether the photo is taken by web or phone camera while using the Virtual Try-On tool." FAC ¶¶ 60-61 (emphasis added).  A scan of facial geometry is specifically identified under the statute as a "biometric identifier."  740 ILCS 14/10.  Furthermore, and equally important, courts have agreed that facial geometry extracted from a photograph can be a "biometric identifier" under BIPA.  *See Sosa*, 2022 WL 1211506, at *7 (noting that nothing in BIPA excludes information derived from photographs from the definition of "biometric identifiers."); *Monroy*, 2017 WL 4099846, at *5 (refusing to adopt defendant's interpretation of the term "scan of face geometry" which would exclude facial scans taken from photographs); *see also Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1106 (N.D. Ill. 2015) (same).

**E.      LVNA's Extraterritoriality Argument is Premature and Plaintiffs' Sufficiently Allege that LVNA's BIPA Violations Occurred Primarily and Substantially in Illinois**

LVNA's final argument is that Plaintiffs' claims should be dismissed because they do not allege a BIPA violation occurred in Illinois.  This argument is premature at this stage of the

litigation and also without merit.  Plaintiffs' factual allegations are sufficient to allege a BIPA violation in the State of Illinois.

### 1.    Defendant's Extraterritoriality Argument Must Await Discovery

As a preliminary matter, numerous courts in analogous BIPA cases have denied motions to dismiss based on extraterritoriality arguments because there is insufficient factual evidence to make such a determination at the Rule 12(b)(6) stage.  Courts have generally held that any determination regarding extraterritoriality should be made at the summary judgment stage following fact discovery.  *See, e.g. Mahmood v. Berbix, Inc.*, No. 22c-2456, 2022 WL 3684636, at *2 (N.D. Ill. Aug. 25, 2022) (recognizing "applying the extraterritoriality doctrine is a fact intensive inquiry best left for summary judgment"); *Vance v. Int'l Bus. Mach. Corp.*, No. 20 C 577, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020) (rejecting extraterritoriality defense at the pleadings stage because the defense requires a "highly fact-based analysis that is generally inappropriate for the motion to dismiss"); *Monroy*, 2017 WL 4099846, at *6 (holding that the extraterritoriality doctrine is better addressed on a motion for summary judgment); *see also Patel*, 932 F.3d at 1275-76 (concluding that the district court did not abuse its discretion in certifying a class when it held that the location of the alleged BIPA violation could be determined on a class-wide basis; *Morrison v. YTB Intern., Inc.*, 649 F.3d 533, 538 (7th Cir. 2011) (only extraordinary circumstances justify dismissal on extraterritoriality grounds at Rule 12(b)(6) stage).

This is because a dispute regarding extraterritoriality "requires a decision as to where the essential elements of a BIPA violation take place."  *Patel*, 932 F.3d at 1276.  Discovery is needed to determine whether there are legitimate extraterritoriality concerns.  *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1101-02 (N.D. Ill. 2017).  The application of the extraterritoriality doctrine requires a fact-intensive inquiry.  *Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill. 2d 100, 187

(2005). "[T]here is no single formula or bright-line test for determining whether a transaction occurs within [Illinois]" and "each case must be decided on its own facts." *Id.*

In its attempt to fend off the overwhelming precedents that support examining extraterritoriality only after fact discovery has occurred, LVNA relies heavily on one unpublished opinion from the District Court in Delaware that is factually distinct—in a very important way— from the present case. In *McGoveran v. Amazon Web Servs., Inc.,* plaintiffs did not "allege *any* direct interaction with [the defendants] that might plausibly be imputed to Illinois." No. 1:20-CV-01399, 2021 WL 4502089, at *5 (D. Del. Sept. 30, 2021) (emphasis added). LVNA's reliance on *McGoveran* is inapposite for several reasons. First, the plaintiffs in *McGoveran* pleaded themselves out of court by alleging that the defendants collected their "voice audio" in Illinois, *which does not qualify as a biometric identifier under the statute*, because voice audio is not the same as a voiceprint. *Id*. at *4. Second, plaintiffs alleged that there were several other locations including Virginia, Ohio, California, and Oregon where the actual collection of voice audio might have occurred other than Illinois. *Id.* Third, the plaintiffs did not allege any direct interaction with defendants—they only interacted with a call center that was not a named defendant. *Id.* In contrast to the plaintiffs in *McGoveran*, Plaintiffs here: (1) allege facts showing LVNA collected their facial geometry (a biometric identifier protected by BIPA) in Illinois, (2) do not allege that LVNA collected or analyzed their biometric data in other locations in the United States, and (3) interacted directly with defendant LVNA via LVNA's website and LVNA's Virtual Try-On Tool, which captured and stored their biometric data. *See, e.g.*, FAC ¶¶ 11, 14, 19-20, 26-27, 51-61, 66.

LVNA further relies on *McGoveran* to argue that the BIPA violations occurred on FittingBox's servers because photographs cannot constitute biometric information under BIPA,

20

so uploading them from Illinois does not suggest a BIPA violation occurred in Illinois.  These arguments are without merit.  Plaintiffs accessed the Virtual Try-On Tool from LVNA's website and used it on the website, which loaded on their devices and captured their biometric data from their devices, while Plaintiffs and their devices were in Illinois.  FAC ¶¶ 19-20, 26-27.  Plaintiff Doyle used the real-time feature of LVNA's Virtual Try-On Tool.  *Id*. ¶¶ 19-20.  While Plaintiff Theriot used the real-time feature and also the picture upload feature of LVNA's Virtual Try-On Tool.  *Id*. ¶¶ 26-27.  And as discussed above, while a photograph itself is not considered biometric information, biometric identifiers can be obtained from photographs, such as through the facial scans of the photographs LVNA's Virtual Try-On Tool does here.  *Id.* ¶ 60; *see also Sosa*, 2022 WL 1211506, at *7 (denying motion to dismiss BIPA claim where plaintiff alleged defendant's software "extracts a unique numerical representation of the shape or geometry of each facial image" or "faceprint" from scans of identification cards and photographs, because the faceprints "plausibly constitute scans of face geometry and, therefore 'biometric identifiers' under BIPA"); *Monroy*, 2017 WL 4099846, at *5 (denying a motion to dismiss and refusing to adopt defendant's interpretation of the term "scan of face geometry" which would exclude facial scans taken from photographs); *Norberg*, 152 F. Supp. 3d at 1106 (same).  Even if Plaintiffs' biometric data was sent to external servers, this transmission would not have happened but for LVNA's initial capture or collection of Plaintiffs' biometric data via its own website, which the Plaintiffs accessed in Illinois.  FAC ¶¶ 11, 14, 19-20, 26-27, 51-61, 66.  Further, it can be plausibly inferred that defendant LVNA also holds the biometric data on its own servers.  This same issue was recently examined in *Powell,* where the court denied defendant's motion to dismiss and held plaintiff's BIPA Section 15(a) and (b) claims could proceed to discovery.  *Powell*, No. 21-CV-2295, at *9-10.  Discovery is clearly necessary to resolve LVNA's proposed extraterritoriality defense.

2.      **Plaintiffs Properly Pled an Illinois Nexus.**

Although Plaintiffs believe it is premature to analyze LVNA's extraterritoriality argument until fact discovery is complete, even if the Court were to examine these issues now, Plaintiffs' allegations in the Complaint already sufficiently demonstrate the essential elements of their BIPA claims "occur[ed] primarily and substantially in Illinois." *Avery*, 216 Ill. 2d at 187.  LVNA's argument to the contrary relies on a faulty reading of Plaintiffs' Complaint.  Although Defendant attempts to suggest that Plaintiffs have only alleged Illinois residency, as discussed further below, this is false.  Consequently, the cases upon which LVNA relies where courts found that the plaintiff's residence cannot be the sole nexus between the unlawful conduct and Illinois are inapposite.  For instance, in *Vulcan Golf, LLC v. Google, Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008), the plaintiffs only alleged they were Illinois residents and had "significant contacts" with Illinois but failed to allege any facts that the deceptive domain scheme occurred in Illinois.

In *Avery*, the relevant circumstances occurred "primarily and substantially" in the situs where, among other things, (a) plaintiffs resided; (b) the deception or "failure to disclose" occurred; and (c) where the plaintiffs incurred their injury.  216 Ill. 2d at 185-187.  Plaintiffs here both allege they are Illinois residents (FAC ¶¶ 19, 26) who, while at their respective homes in Illinois, accessed defendant LVNA's website and utilized LVNA's Virtual Try-On Tool, which was made available to them by LVNA to use while in Illinois.  *Id.*  Plaintiff Doyle utilized LVNA's Virtual Try-On Tool once for approximately one hour, and Plaintiff Theriot accessed LVNA's Virtual Try-On Tool four times for approximately one hour each time.  *Id.*  Thus, while using the LVNA's Virtual Try On tool in their Illinois homes, LVNA's Try-On Tool launched and accessed Plaintiffs' cameras, also located in Illinois, and extracted their facial biometrics through facial scans done during their Virtual Try-On Tool sessions in Illinois.  *Id.* ¶¶ 19-20, 26-27, 52, 54-61.  Plaintiffs were then able to view themselves virtually "wearing" LVNA sunglasses

while at home in Illinois. *Id.* ¶¶ 19-20, 26-27. Defendant also failed to provide notice to, or receive consent from, the Plaintiffs and each member of the Class in Illinois (*id.* ¶¶ 21-24, 28-31, 67-69); failed to develop, provide, and implement a written policy and retention schedule for storing and destroying biometric information collected from Plaintiffs and Class members in Illinois (*id.* ¶ 70); and violated Plaintiffs' and the other Class members' rights in Illinois (*id.* ¶¶ 19-32). At the pleadings stage, when facts must be construed in Plaintiffs' favor, these allegations are sufficient to plausibly allege that defendant LVNA's BIPA violations occurred primarily and substantially in Illinois.

In a similar case, the court found that the plaintiffs' allegations that the defendant extracted biometric data from pictures uploaded by Illinois citizens using Illinois IP addresses while in Illinois were sufficient to "tip toward a holding that the alleged violations primarily happened in Illinois" and permitted the plaintiffs to proceed with discovery. *Rivera*, 238 F. Supp. 3d at 1102. Further, an injured party can bring a BIPA claim even if some of the relevant activities take place outside of Illinois. *See Patel*, 932 F.3d at 1276 ("It is reasonable to infer that the General Assembly contemplated BIPA's application to individuals who are located in Illinois, even if some relevant activities occur outside the state."). The Court should reject Defendant's extraterritoriality argument at this stage of the litigation.

## CONCLUSION

For all of the foregoing reasons, the Court should deny LVNA's Motion to Dismiss in its entirety.

Dated: September 9, 2022                    Respectfully submitted,

                                                                    */s/ Nada Djordjevic*
                                                                    ADAM J. LEVITT
                                                                    alevitt@dicellolevitt.com
                                                                    AMY E. KELLER, *pro hac vice*

akeller@dicellolevitt.com
NADA DJORDJEVIC, *pro hac vice*
ndjordjevic@dicellolevitt.com
JAMES A. ULWICK, *pro hac vice*
julwick@dicellolevitt.com
SHARON CRUZ, *pro hac vice*
scruz@dicellolevitt.com
**DiCELLO LEVITT LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900

DAVID A. STRAITE
dstraite@dicellolevitt.com
**DiCELLO LEVITT LLC**
485 Lexington Avenue, Tenth Floor
New York, New York  10017
Telephone: (646) 933-1000

JAMES J. PIZZIRUSSO, *pro hac vice*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, D.C.  20006
Telephone: (202) 540-7200

STEVEN M. NATHAN
snathan@hausfeld.com
**HAUSFELD LLP**
33 Whitehall St., Fourteenth Floor
New York, New York  10004
Telephone: (646) 357-1100

***Counsel for Plaintiffs and the Proposed Class***

## <u>CERTIFICATE OF FILING</u>

I hereby certify that a copy of the foregoing was filed with this Court using its CM/ECF service, which will send notification of such filing to all counsel of record this 9th day of September 2022.

*/s/ Nada Djordjevic*
Nada Djordjevic

*Counsel for Plaintiffs and the
Proposed Class*
