## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAULA THERIOT and CHERYL DOYLE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>vs.<br><br>LOUIS VUITTON NORTH AMERICA, INC.,<br><br>Defendant. | Civil Action No.: 1:22-CV-02944-DLC<br><br>**REPLY IN SUPPORT OF DEFENDANT LOUIS VUITTON NORTH AMERICA, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER FED. R. CIV. PROC. 12(B)(1) AND 12(B)(6)** |

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1
ARGUMENT .................................................................................................................................. 2
I.   Plaintiffs Lack Standing for Their Section 15(a) Claim............................................................ 2
II.  All of Plaintiffs' Claims Should Be Dismissed for Failure to State a Claim. ......................... 3
    A.   Plaintiffs' Section 15(a) Claim Should Be Dismissed. ..................................................... 3
    B.   Plaintiffs' Section 15(b) Claim Should Be Dismissed. ..................................................... 7
    C.   Both of Plaintiffs' Claims Should Be Dismissed Because They Fail to Allege Any Violation in the State of Illinois. ....................................................................................... 9
CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**                                                            **Page(s)**

*Abbey House Media, Inc. v. Apple Inc.*,
  66 F. Supp. 3d 413 (S.D.N.Y. 2014)..................................................................................5

*Fox v. Dakkota Integrated Sys., LLC*,
  980 F. 3d 1146 (7th Cir. 2020) ......................................................................................2, 3

*Garner v. Buzz Finco LLC*,
  No. 3:21-CV-50457, 2022 WL 1085210 (N.D. Ill. Apr. 11, 2022)........................................3

*Heard v. Becton, Dickinson, & Co.*,
  440 F. Supp. 3d 960 (N.D. Ill. 2020) ..................................................................................6

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995)..................................................................................................5

*Jacobs v. Hanwha Techwin America, Inc.*,
  No. 1:21-CV-00866, 2021 WL 3172967 (N.D. Ill. July 27, 2021) .........................................6

*McGoveran v. Amazon Web Servs., Inc.*,
  No. 1:20-CV-01399, 2021 WL 4502089 (D. Del. Sept. 30, 2021)....................................9, 10

*Morrison v. YTB Int'l, Inc.*,
  649 F.3d 533 (7th Cir. 2011) ................................................................................................9

*Namuwonge v. Kronos, Inc.*,
  418 F. Supp. 3d 279 (N.D. Ill. 2019) ...................................................................................7

*Naughton v. Amazon.com, Inc.*,
  No. 20-cv-6485, 2022 WL 19324 (N.D. Ill. Jan. 3, 2022).................................................7, 8

*Parker Madison Partners v. Airbnb, Inc.*,
  283 F. Supp. 3d 174 (S.D.N.Y. 2017)..................................................................................5

*Patterson v. Respondus, Inc.*,
  No. 20-C-7692, 2022 WL 860946 (N.D. Ill. Mar. 23, 2022) .................................................2

*Powell v. Shisheido Americas Corp.*,
  No. 21-cv-02295 (C.D. Ill. Aug. 22, 2022).......................................................................5, 8

*Woods v. FleetPride, Inc.*,
  No. 1:21-CV-01093, 2022 WL 900163 (N.D. Ill. Mar. 27, 2022) .........................................3

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition to LVNA's Motion to Dismiss (the "Opposition") litigates a complaint that does not actually exist, at least not in this case. LVNA's Motion to Dismiss and accompanying memorandum (the "Motion")[1] established that the FAC largely comprises impermissible conclusions parroting the statutory language of BIPA. Even more important, in those few cases in which the FAC delves into specifics, they are fatal to Plaintiffs' claims. Plaintiffs themselves assert the VTOT operates by having users or LVNA transmit non-biometric photographs to FittingBox, which, according to Plaintiffs, *FittingBox* then processes into "biometric" scans of face geometry. Nowhere, aside from formulaic conclusions contradicted by its own specific allegations, does the FAC allege that LVNA ever takes actual "possession" of any biometrics at any time, let alone that LVNA takes an active step in the "collection" of biometrics.

The Opposition disregards the specific allegations from Plaintiffs' own FAC and invites the Court to do so too. It buries its response to the primary argument of the Motion in a mere footnote, where it announces that LVNA has "misconstrue[d]" the FAC, without explaining why or how. In place of a careful analysis, it attempts to rely on generic, rhetorical allegations from the FAC to contradict specific, factual ones. As a result, the bulk of the Opposition is an academic, irrelevant exploration how a BIPA claim might be litigated if the generic allegations were permissible and the specific allegations of the FAC did not exist.

Federal pleading standards forbid this attempted rescue of a defective complaint by ignoring its own specific allegations, which in this case requires dismissal of the FAC. Plaintiffs cannot avoid this result by relying on broad conclusions that are undermined by what few details they offer. This Court gave Plaintiffs a chance to plead a Second Amended Complaint if they

---

[1] All capitalized terms herein have the same meanings as set forth in LVNA's Motion. Additionally, LVNA attaches one exhibit to this brief, which it labels "Exhibit B" to avoid confusion with Exhibit A to the Opposition.

could, and warned that they would likely not get another chance. They declined to fix the defects, obviously because the specific facts they inadvertently alleged preclude such an amendment. The FAC is manifestly the only set of facts they can honestly assert, which are just as manifestly insufficient to state a claim. It should be dismissed with prejudice.

**ARGUMENT**

I. **Plaintiffs Lack Standing for Their Section 15(a) Claim.**

The Motion argued, and the Opposition readily concedes, that the mere failure to publish a retention schedule for biometric data—the crux of Plaintiffs' Section 15(a) claim—does not create a particularized "injury in fact" under Article III. (Opp. at 7 (citing *Bryant v. Compass Grp. USA, Inc.,* 958 F.3d 617 (7th Cir. 2020).) To try to create standing, Plaintiffs attempt a bait-and-switch, relying on *Fox v. Dakkota Integrated Sys., LLC*, 980 F. 3d 1146 (7th Cir. 2020) for the premise that failure to *comply* with an established retention schedule can yield a particularized injury-in-fact because it implicates "unlawful retention" of biometric data. (*Id.* at 7-8.)

The problem with Plaintiffs' argument is that it has nothing to do with the FAC. Unlike in *Fox* and Plaintiffs' other cited cases, Count II of the FAC asserts *only* a failure to "develop, possess, or publish" an applicable written policy, and is devoid of allegations that LVNA "failed to comply with a retention-and-destruction policy or … retained [Plaintiffs'] biometric data beyond the time limits set by section 15(a)" (indeed, as addressed *infra*, LVNA never even *acquired* this data). *Patterson v. Respondus, Inc.*, No. 20-C-7692, 2022 WL 860946, at *17 (N.D. Ill. Mar. 23, 2022).

Nor can Plaintiffs manufacture an injury through bare unsupported allegations that LVNA's conduct has somehow placed their "sensitive biometric identifiers at risk[.]" (Opp. at 9.) The Motion cited multiple authorities rejecting such attempts to conjure a *Fox*-like Article III injury out of a boilerplate failure-to-publish claim, and the Opposition makes no effort to address these authorities beyond a single hand-waving footnote. *See, e.g.*, *Patterson*, 2022 WL 860946,

at *17; *Woods v. FleetPride, Inc.*, No. 1:21-CV-01093, 2022 WL 900163, at *5 (N.D. Ill. Mar. 27, 2022) (distinguishing *Fox* and remanding Section 15(a) claim that "hinges only on the failure to publish"); *Garner v. Buzz Finco LLC*, No. 3:21-CV-50457, 2022 WL 1085210, at *3–4 (N.D. Ill. Apr. 11, 2022) (same). Plaintiffs lack standing to pursue their Section 15(a) claim.

**II.     All of Plaintiffs' Claims Should Be Dismissed for Failure to State a Claim.**

LVNA's Motion established that the FAC failed to allege LVNA ever "possessed" or "collected" biometrics as required to state a claim for BIPA Sections 15(a) or (b), respectively. The generic allegations in the FAC parroting BIPA's language support no other conclusion, particularly as they are undermined by the few specific factual allegations of the FAC.

**A.     Plaintiffs' Section 15(a) Claim Should Be Dismissed.**

The parties agree that Section 15(a) applies only to entities "in possession of" regulated biometrics, and that "possession" should be understood as occurring "when a person has or takes control of the subject property or holds the property at his or her disposal." (Mot. at 11, Opp. at 9-10.) The main disagreement between the parties is whether the Court should ignore the FAC's specific but now inconvenient allegations how the VTOT actually works. Because those facts are critical to this Motion, LVNA recounts them here.

In the FAC's telling, no regulated biometrics are possessed or collected by any party except FittingBox. It explains that the VTOT operates by collecting data from users and "send[ing] it to the address listed below." (FAC ¶ 62.) The "address listed below" is a FittingBox URL. (*Id.*) It claims that "an analysis of the data sent from the user's device to those servers" (*id.* ¶ 63) "shows that the user's image is translated into Base 64 code, then sent to an outside server." It admits that this translation of the "user's image [] into Base 64 code" is merely a means of transmitting a photograph to the "outside server." (*Id.* ¶ 64 ("Using a 'Base 64 to image' decoder on the code transmitted yields the user's image.")). It is only once the photographs have reached FittingBox's

3

server that biometrics are "extracted from the users' images" (*id.* ¶ 65) and then "repackaged and sent back to the user's device" (*id.* ¶ 66). These allegations are unambiguous that only a photograph is at first obtained. It is uncertain only whether LVNA is alleged to have sent the users' picture to FittingBox's server or whether FittingBox's server got it directly from the user. (*See* Mot. at 4 n.2.) But in either event, dismissal is required: either LVNA "possessed" nothing at all relating to users, or at most "possessed" a photograph of the user, and photographs are expressly exempt from BIPA. (*See* Mot. at 5.)[2]

The Opposition never addresses this argument – the core of the Motion – except in its wayward footnote, where it announces that Defendants have "misconstrue[d] the [FAC] as alleging that it is a photograph that is transmitted to FittingBox's server…" (Opp. at 15 n.7.) But nothing is "misconstrued" in this respect; the FAC itself is clear: Plaintiffs' "analysis of the data sent from the user's device to those [FittingBox] servers" "shows" that the "user's image is…sent to an outside server" in the form of "Base 64 code," i.e. *a photograph*. (FAC ¶¶ 62-64.) The Opposition never explains how paragraphs 62 through 64 can be interpreted to mean that LVNA "possessed" biometric data that was not yet extracted from those photographs. In fact, Plaintiffs' Opposition steadfastly refuses to quote paragraphs 63 and 64 at all, and in the one instance where the FAC quotes paragraph 62, it omits (*without* acknowledging the ellipsis) the screenshot showing that the "address below" that received the data is a FittingBox URL. (*See* Opp. at 12.)

Instead of addressing these specific allegations that LVNA received no biometric data, the Opposition falls back on generic statements. It blockquotes more than a page of broad, sweeping

---

[2] The Opposition argues that information extracted from a photograph, including a scan of facial geometry, can be a regulated biometric. (*See* Opp. at 15 n.7, 18.) LVNA does not ask the Court to rule otherwise in this Motion. LVNA's point is that when the users' data is merely a photograph, it is not a regulated biometric. As a result, the FAC's allegations regarding LVNA's "possession" of users' photographs are insufficient to state a claim that LVNA "possessed" biometrics, regardless what FittingBox later does with the photograph on its servers.

pronouncements in the FAC such as: "LVNA collects detailed and sensitive biometric identifiers and information…" (*See* Opp. at 10-12, 15 n.7, quoting FAC ¶ 11.)  But the Court is not obligated to accept, indeed must reject, bare conclusions such as these. *E.g.*, *Parker Madison Partners v. Airbnb, Inc.*, 283 F. Supp. 3d 174, 179 (S.D.N.Y. 2017) (complaint "must contain more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" and the truth of legal conclusions need not be assumed) (citation omitted).  Moreover, even if the FAC had made broad but still essentially factual allegations – which it did not – "general allegations that are contradicted by more specific allegations in the Complaint" also need not be accepted as true and are irrelevant here.  *Abbey House Media, Inc. v. Apple Inc.*, 66 F. Supp. 3d 413, 419 (S.D.N.Y. 2014) (quoting *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 141, 151-52 (2d Cir. 2014)); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) (same).

Because Plaintiffs elected to brief this issue as if Paragraphs 62 through 64 simply did not exist, their efforts at distinguishing LVNA's authority necessarily fail.  LVNA does not dispute that "BIPA does not limit possession to a single entity."  (*See* Opp. at 12, citing *Heard v. Becton, Dickinson, & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020).)  The Motion does not argue that dismissal is warranted because the FAC can be read to suggest FittingBox *also* possessed regulated biometrics; rather, it is warranted because the FAC alleges that the maximum possible extent of LVNA's role was possessing a non-actionable user photograph.

For the same reason, Plaintiffs' primary authority, *Powell v. Shisheido Americas Corp.*, No. 21-cv-02295 (C.D. Ill. Aug. 22, 2022) (Ex. A to Opp.), is inapposite.  The *Powell* Complaint contained nothing similar to Paragraphs 62-64 of the FAC (*see Powell* Complaint, Ex. B hereto), and the defendant there relied solely on an allegation that the VTO tool was "powered by" a third-party vendor.  (*See id.* at ¶¶ 23-24.)  The court even acknowledged the possibility that an

5

application could be implemented on defendant's website "in such a way that the third party, and only that third party, captured, collected, and possessed the facial geometry in question" – the very circumstance here – but held that a mere "powered by" allegation was insufficient to rule other possibilities out. (Ex. A to Opp. at 9.) The FAC is different: it contains detailed, specific allegations establishing that FittingBox alone possessed the biometrics at issue.

The Opposition next attempts to dismiss *Heard* and *Jacobs v. Hanwha Techwin America, Inc.*, No. 1:21-CV-00866, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021) because in those instances, it was the technology manufacturer who was dismissed, and they contend LVNA seeks the "opposite" result here. (Opp. at 13-14.) This argument is entirely irrelevant to the question actually at issue. By its plain language and to serve its very purpose, Section 15(a) does not apply based on location in the chain of commerce, but is based upon "possession." In some instances, the technology manufacturer does not "possess" biometrics because it simply makes a device and sells it, without ever obtaining any data collected by the device. *E.g.*, *Heard*, 440 F. Supp. 3d at 968–69; *Jacobs*, 2021 WL 3172967 at *3. Here, it is the vendor that exclusively possesses the biometrics because it directly takes non-biometric data from the user (or LVNA) and extracts a facial scan from that photograph on its own server. (FAC ¶¶ 62-66.)

Finally, Plaintiffs suggests that *Stauffer II* is inapposite because one other court has held that allegations that a defendant had a contractual right to access the biometric data, even if it did not exercise it, are sufficient to allege "possession." (Opp. at 14-15.) But the FAC does not contain any allegation of that kind either (*see generally*, FAC), so this debate has no application here.

The FAC's specific allegations allow only one conclusion: LVNA never "possessed" any biometric information. At most, it was alleged to "possess" user photographs, which are not regulated biometrics under BIPA. Plaintiffs' Section 15(a) claim should be dismissed.

### B.     Plaintiffs' Section 15(b) Claim Should Be Dismissed.

Plaintiffs do not dispute that Section 15(b) applies only to entities that "collect" regulated biometrics, nor do they dispute that "collection" requires "go[ing] beyond mere possession" and taking an "active step" to obtain them. (*See* Opp. at 15-16.) Just as the FAC's allegations are insufficient to allege "possession," they are definitionally insufficient to allege the greater act of "collection." (*See* Mot. at 13-14.) In fact, the FAC contains even more vitiating allegations here, all of which the Opposition ignores. The FAC expressly limits LVNA's role to merely "enabling and facilitating the collection and storage of its customers' biometric data." (FAC ¶ 63.)

Once again, the Opposition fails to address the Motion's arguments regarding the impact of the FAC's own admissions. (*Compare* Mot. at 14; Opp. at 15-17.) Plaintiffs cannot ignore their way out of trouble: they are bound by their admissions that LVNA's role was passive and secondary to FittingBox's, and these require dismissal of the Section 15(b) claims. *E.g.*, *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286, 282 (N.D. Ill. 2019) (dismissing Section 15(b) claim against manufacturer of fingerprint timecard system because plaintiff's "more precise allegation[s]" made clear that it was the employer who took the active step to collect fingerprints by requiring employees to use the system). Plaintiffs' attempt to distinguish LVNA's authority based on chain-of-commerce comparisons fails here too. (*See* Opp. at 16-17.) The issue the Legislature deemed relevant is not "vendor" versus "purchaser," but "collector" versus not. Under the FAC's own allegations, FittingBox is the "collector," not LVNA.

Plaintiffs next assert this case is similar to *Naughton v. Amazon.com, Inc.*, No. 20-cv-6485, 2022 WL 19324 (N.D. Ill. Jan. 3, 2022). That this is Plaintiffs' best authority is revealing. There, the defendant "itself implemented the facial scans and required workers," like Plaintiffs, "to submit to these scans as a condition of work." *Id.* at *3. The court held that this was sufficient to allege an active role in collection. *Id.* Nothing remotely comparable is alleged here. Even Plaintiffs can

7

only characterize the VTOT as an "opportunity" available to website users (Opp. at 16); clearly, LVNA did not compel Plaintiffs to virtually try on Louis Vuitton sunglasses.

Plaintiffs' final argument relies upon *Powell*, which they use to flip the "active step" requirement of the case law on its head.  Courts have explained that "collection" exceeds "possession" because it requires the defendant "take an *active step* to collect, capture, or otherwise obtain the plaintiff's biometric information."  *Stauffer II*, 2022 WL 3139507 at *4 (citations omitted).  It distinguishes active collectors from those who merely possess biometric data and played only a "passive role" in obtaining it.  *Id.* at *4-5.  The *Powell* court erred by treating "active step" not as a limitation, but as an independent basis for Section 15(b) liability.  It held that the defendant took "affirmative steps" by hiring a VTO vendor, placing a VTO link on its websites, and directing website users to the application.  (Ex. A to Opp. at 12.)  But none of those steps involved <u>any actual collection</u> of biometrics:  no biometric data is collected when the vendor contract was signed, for example.

Plaintiffs' interpretation, based on *Powell,* inverts the whole purpose of the "active step" case law, which was to explain how "collection" is not accomplished by mere "possession."  No one would argue that merely hiring a VTO vendor – before their services are ever utilized – results in any "possession" of biometric data, let alone actual "collection."  But to the *Powell* court, that same act is an "active step" toward eventual use of biometric data by at least that vendor and renders the website host liable under Section 15(b).  Nothing in BIPA's plain language, the other "active step" case law, or common sense supports this result.  The Opposition invites this Court to make the same error and adopt an interpretation of "collection" that does not require any actual "collection" of biometric data.  It should not do so.

### C. Both of Plaintiffs' Claims Should Be Dismissed Because They Fail to Allege Any Violation in the State of Illinois.

LVNA's Motion established that (a) BIPA does not apply outside of Illinois, (b) it is Plaintiffs' burden to plead allegations plausibly suggesting the alleged violations occurred primarily and substantially in Illinois, and (c) "a plaintiff's residency is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality." (Mot. at 16-17 (quoting *McGoveran v. Amazon Web Servs., Inc.*, No. 1:20-CV-01399, 2021 WL 4502089, at *3 (D. Del. Sept. 30, 2021).) The Opposition disputes none of these points. (*See* Opp. at 18-23.) Instead, it primarily relies on cases in which this issue was, based on the allegations in those complaints, too fact-intensive to resolve on a motion to dismiss. (*See* Opp. at 19.)[3] But general notions when this issue is best addressed are not sufficient to avoid dismissal under the circumstances here: Plaintiff still must plead *some* facts, other than mere Illinois residency, to make it plausible that BIPA applies to this case. They have not done so.

As set forth in the Motion, this case is nearly identical to *McGoveran*, which dismissed BIPA claims on extraterritoriality grounds because the sole alleged tie to Illinois was the plaintiffs' residency there. (*See* Mot. at 17-19.) Plaintiffs attempt to avoid this result by stretching the fact of mere residency into additional facts. (*See* Opp. at 21, 23 (arguing they accessed the VTOT from devices in Illinois and they were injured in Illinois).) But the plaintiffs in *McGoveran* made the same argument, and the court explained that "repeated statements (phrased three different ways) about Plaintiffs' residency" are still insufficient. 2021 WL 4502089 at *4. Similarly, Plaintiffs claim an Illinois connection because that is where Defendants "failed to provide notice." (Opp. at 23.) The Motion and *McGoveran* explained how this argument is circular – the question is whether

---

[3] The Opposition overstates *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 538 (7th Cir. 2011) with a parenthetical reading: "only extraordinary circumstances justify dismissal on extraterritoriality grounds at Rule 12(b)(6) stage." *Morrison* said nothing that justifies that characterization. *See id.*

BIPA even applies at all, so one cannot first assume that it does (thereby requiring a notice) and then infer from the lack of notice in Illinois that BIPA applies. (Mot. at 18.) The Opposition never responds to this argument.

Finally, the Opposition attempts to distinguish *McGoveran*, but only underscores why it compels dismissal here. It first argues that the *McGoveran* defendant collected only "voice audio," which "*does not qualify as a biometric identifier under the statute*" until it is converted into a "voiceprint." (Opp. at 20.) These allegations are not distinguishing, but in fact nearly identical to the FAC's allegations that LVNA possessed (at most) photographs, which are not biometrics until scans of facial geometry are extracted. (*See* Mot. at 17-18.) The Opposition argues that *McGoveran* is distinguishable because those plaintiffs alleged biometric collection may have occurred in places other than Illinois. But so too have Plaintiffs: their FAC alleges that FittingBox collected any biometrics, and suggests it is a "foreign compan[y]." (FAC ¶ 96.) Finally, Plaintiffs' "interaction" with LVNA's website also cannot save Plaintiffs because nothing about that interaction has to do with Illinois: LVNA is alleged to be a New York company. (FAC ¶ 17.) Alleging an online "interaction" took place "in Illinois" is incoherent except insofar as it merely invokes Plaintiffs' residency, which is insufficient as a matter of law to establish a tie to Illinois.

Plaintiffs have not plausibly alleged that their use of a New York company's North American website and utilization of a foreign company's application (FAC ¶¶ 17, 51, 96) resulted in BIPA violations that "primarily and substantially" occurred in Illinois. "Because events were centered outside Illinois" (*see* Mot. at 16 quoting authority), they cannot rely on an Illinois law not intended to apply outside its borders. All claims should be dismissed on extraterritoriality grounds.

## CONCLUSION

LVNA respectfully requests that the Court grant the relief sought in its Motion.

10

Dated: September 23, 2022     Respectfully submitted,

/s/ Robert E. Shapiro
Robert E. Shapiro
Maile H. Solís (*pro hac vice* forthcoming)
Connor T. Gants (*pro hac vice* forthcoming)
David B. Lurie (*pro hac vice* forthcoming)
BARACK FERRAZZANO KIRSCHBAUM
& NAGELBERG LLP
200 West Madison Street, Suite 3900
Chicago, IL 60606
Ph: (312) 984-3100
Fx: (312) 984-3150
rob.shapiro@bfkn.com
maile.solis@bfkn.com
connor.gants@bfkn.com
david.lurie@bfkn.com

***Counsel for Defendant Louis Vuitton North America, Inc.***

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, states that on September 23, 2022, a copy of the foregoing, **REPLY IN SUPPORT OF DEFENDANT LOUIS VUITTON NORTH AMERICA, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER FED. R. CIV. PROC. 12(B)(1) AND 12(B)(6),** was served upon all counsel of record electronically by ECF filing within the United States District Court, Southern District of New York.

Dated:  September 23, 2022                                                  /s/ Robert E. Shapiro